## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KEITH PIERCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1989 (RMU)** |
| | ) | |
| **R. JAMES NICHOLSON, Secretary,** | ) | |
| **U.S. Department. of Veterans' Affairs,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, Defendant R. James Nicholson, Secretary, Department of Veterans Affairs, respectfully submits his motion for an order dismissing this case for lack of subject matter jurisdiction and failure to state a claim on which relief may be granted.  In the alternative, pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant moves the Court for summary judgment on the grounds that no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.  The grounds for this motion are set forth in the accompanying Memorandum of Points and Authorities in Support of Motion to Dismiss or, in the Alternative, Motion For Summary Judgment. A Statement of Material Facts As To Which There Is No Genuine Issue and a proposed order are also attached.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, DC Bar #489610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____/s/_____
ALEXANDER D. SHOAIBI, Bar #423587
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KEITH PIERCE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Civil Action No. 05-1989 (RMU)** |
| ) | |
| **R. JAMES NICHOLSON, Secretary,** ) | |
| **U.S. Department of Veterans Affairs,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Through allegations of discrimination and retaliation, Plaintiff has sought to transform this Court into a super personnel board for his employer, Defendant. His allegations are nothing more than his attempt to force Defendant to "see things his way" and hire him for his desired position as the head of the Patient Advocate Office, Veterans Administration Medical Center in Washington, D.C. Plaintiff presents no evidence that Defendant either discriminated or retaliated against him when it did not select him for the position in question, but instead offers only conjecture and his opinions. He is so absorbed in his quest for his dream job that he fails to understand that others may legitimately disagree with his opinion that he is the most qualified candidate for that position. Even after acknowledging the superior skills of a selectee, Plaintiff insists that he is entitled to lead the Office of Patient Advocacy. Refusing to move forward and accept that he may not be the best qualified candidate, Plaintiff chooses to place discrimination and retaliation into the history of his non-selections. By rewriting the past, Plaintiff hopes to change the future. The undisputed material

facts of this case, however, belie the crumbling foundations of Plaintiff's allegations. Instead of engaging in a scheme of discrimination and retaliation to deprive Plaintiff of a career opportunity, Defendant fairly, justly, and prudently evaluated all applicants and concluded that Plaintiff was not the best candidate for the job. It is not within the scope of this Court's review to second guess legitimate, non-discriminatory, non-retaliatory business decisions of employers. Defendant's motion to dismiss or, in the alternative, motion for summary judgment should, therefore, be granted, and this matter dismissed.

## FACTUAL BACKGROUND

Defendant respectfully refers the Court to the accompanying Statement of Material Facts As to Which There is No Genuine Dispute, which has been filed pursuant to Local Civil Rule 7.1(h), for a recitation of the undisputed facts in this case.

## STANDARD OF REVIEW

### I.    Motion to Dismiss (Fed.R.Civ.P. 12(b)(1) and 12(b)(6))

Defendant moves for dismissal under Rule 12(b)(1), as the Court lacks jurisdiction over certain of Plaintiff's claims, and Rule 12(b)(6), as Plaintiff fails to state any claim upon which relief can be granted. "In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Thompson v. Capitol Police Board, 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted). "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." Rann v. Chao, 154 F. Supp.2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003), cert. denied, 125 S.Ct. 35 (Oct. 4, 2004). In addition, "[on] a motion to dismiss pursuant

to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence." Thompson, 120 F. Supp.2d at 81.

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in either of two ways. First, the court may determine the motion based solely on the complaint. Herbert v. National Acad. Of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. See id.; Rann, 154 F. Supp.2d at 64.

A motion to dismiss brought pursuant to Rule 12(b)(6) should be granted if it is beyond doubt that a plaintiff can demonstrate no set of facts that supports his claim entitling him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000). Although the plaintiff is given the benefit of all inferences that reasonably can be derived from the facts alleged in the complaint, the court need not accept inferences that are not supported by such facts, nor must the court accept plaintiff's legal conclusions cast in the form of factual allegations. Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## II.    Motion for Summary Judgment (Federal Rule of Civil Procedure 56)

Under Federal Rule of Civil Procedure 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine, and should preclude summary judgment, if a reasonable jury could return a verdict in favor of the non-moving party. Id. In contrast, a moving party is entitled to summary

judgment against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Waterhouse v. District of Columbia, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000); see also Washington Post Co. v. U.S. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989). The nonmoving party's opposition must consist, however, of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324.

## ARGUMENT

**I.     To the Extent that Plaintiff Makes Any Claims Other than His Non-Selection for Vacancy Announcement MCD 04-35A, Those Claims Should be Dismissed Because Plaintiff Failed to Timely Exhaust His Remedies for Those Claims At the Administrative Level.**

The Complaint specifically mentions one incident of alleged discrimination and retaliation: nonselection that occurred on October 21, 2004. Complaint at ¶ 20. Plaintiff does not refer to the vacancy announcement by number. See id. He incorrectly refers to the position as "Lead Patient Advocate." Id.; see also id. at ¶ 12 ("The Defendant failed to select Plaintiff for the Lead Patient Advocate position"). However, the date referred in paragraph 20 of the Complaint suggests that Plaintiff is referring to his non-selection for Job Vacancy Announcement MCD 04-35A. Defendant's Statement of Material Facts ("DSMF") at ¶¶ 58-59. Thus, the only allegations in this

case involve Plaintiff's non-selection for MCD 04-35A.    When Plaintiff filed his formal Complaint of discrimination with the Department of Veteran Affairs Office of Resolution Management ("ORM") on January 5, 2005, he also challenged his non-selection for Vacancy Announcments MCD 04-23 and MCD 04-35.  DSMF at ¶ 61.  On April 14, 2005, ORM dismissed all of Plaintiff's claims except for his claim regarding non-selection for MCD 04-035A.  DSMF at ¶ 62.  ORM dismissed Plaintiff's other claims under 29 C.F.R.1614.105(a)(2) because he did not seek counseling for those claims within 45 days of the alleged incident.  Id.

To the extent that Plaintiff attempts to raise any claims other than his non-selection for MCD 04-35A, these claims are barred.  An aggrieved person must make contact with a counselor within 45 days of the date of the matter alleged to be discriminatory, or in the case of a personnel action, within 45 days of the effective date of the action.  29 C.F.R. § 1614.105(a)(1).

The position at issue, Director of the Office of Patient Advocacy ("Director"), Veterans Administration Medical Center, Washington, D.C. ("VAMC"), was advertised under three separate Vacancy Announcements at different times.  DSMF at ¶¶ 14, 24, 46, 47.  When Petitioner filed his Complaint with ORM, he alleged discrimination (race, age, and disability) and retaliation regarding all three vacancy announcements.  DSMF at ¶ 61.  The first announcement, MCD04-23 opened on March 8, 2004 and closed on March 26, 2004.  DSMF at ¶ 14.  On April 1, 2004, Plaintiff was notified that he was not qualified for MDC 04-23 because he "did not meet the time in grade restrictions."  DSMF at ¶ 20.  Plaintiff did not contact an EEO counselor until December 6, 2004.  DSMF at ¶ 60.

The second announcement, MCD 04-35, opened on April 2, 2004 and closed on April 23, 2004.  DSMF at ¶¶ 24-25.  On September 9, 2004, Plaintiff learned from Human Resources that the

position had been reannounced as MCD 04-35A.  DSMF at ¶ 48.  Plaintiff did not contact on EEO counselor until December 6, 2004.  DSMF at ¶ 60.

The third announcement, MCD 04-35A opened on September 9, 2004 and closed on September 13, 2004.  Exhibit 16.  On October 21, 2004, Plaintiff learned that William Sivley ("Sivley") had been placed in the reannounced position.  DSMF at ¶ 58.  On October 27, 2004, Human Resources informed Plaintiff that Sivley was "returning to his position of record on a permanent basis."  Id.  Plaintiff contacted an EEO counselor on December 6, 2004 about this matter and his non-selections for the other announcements.  DSMF at ¶ 60.

Except for Vacancy Announcement MCD 04-35A, Plaintiff failed to comply with the requirement set forth in 29 C.F.R. § 1614.105(a)(1), because he did not make contact with a counselor within 45 days of the date of the matter alleged to be discriminatory, or in the case of a personnel action, within 45 days of the effective date of the action.  Therefore, Plaintiff failed to timely exhaust his administrative remedies for all of the other claims that he presented in his January 5, 2005 Complaint before the ORM.

To the extent that Plaintiff attempts to bring claims other than his non-selection for 04-35A, these claims are subject to dismissal.  See Carmona v. O'Neill, 2002 WL 1635379, *1 (D.C. Cir. Oct. 1, 2002)(retaliation claim properly dismissed for failure to properly exhaust administrative remedies); Jordan v. Pension Benefit Guar. Corp., 2001 WL 1154545, *1 (D.C. Cir. Aug. 15, 2001)(district court properly dismissed retaliation claim for failure to exhaust administrative remedies); Kidane v. Northwest Airlines, Inc., 41 F.Supp.2d 12, 15 (D.D.C. 1999)(because EEOC complaint alleged only discrimination, Plaintiff's retaliation claim was barred for failure to exhaust administrative remedies).

_____Accordingly, to the extent that Plaintiff makes any claims other than those regarding his non-selection for MCD 04-35, those claims should be dismissed for failure to exhaust administrative remedies.

## II.   PLAINTIFF'S DISCRIMINATION CLAIMS FAIL BECAUSE HE DOES NOT ESTABLISH A PRIMA FACIE CASE FOR THOSE CLAIMS.

Plaintiff alleges discrimination based on race, age, and disability.  Complaint at ¶ 20.  At the summary judgment stage, the Court must determine whether the plaintiff has produced sufficient evidence to support a reasonable inference of discriminatory conduct.  See Foster v. Arcata Assoc., Inc., 772 F.2d 1453, 1459 (9th Cir.1985), cert. denied 475 U.S. 1048 (1986).  Plaintiff has not met this burden.  Through his own deposition testimony, Plaintiff essentially disavowed these claims.  In addition, he provided no evidence to suggest that these claims have any viability.  Thus, these claims are legally baseless and should be dismissed with prejudice per Defendant's Motion for Summary Judgment.

### A.   PLAINTIFF PROVIDES NO EVIDENCE TO SUPPORT HIS ALLEGATIONS OF  RACE AND AGE DISCRIMINATION.

### 1.   Standard for Analzying Claims of Race and Age Discrimination

Title VII makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).

When, as here, the record contains no direct evidence of discrimination, allegations of race discrimination under Title VII and age discrimination under the ADEA are both analyzed under the familiar McDonnell Douglas three-part "shifting burdens" test.  See McDonnell Douglas Corp. v.

7

Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); see also Brown v. Brody, 199 F.3d 446, 452 (D.C.Cir.1999) (applying McDonnell Douglas framework to federal employee's Title VII claims); Barnette v. Chertoff, 453 F.3d 513, 515 (D.C.Cir.2006) (applying framework to ADEA claims). Pursuant to McDonnell Douglas, once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the challenged action. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981) (defendant's burden articulated for Title VII cases). The defendant's burden is one of production, not of proof.[1] See Aka v. Washington Hosp. Ctr., 156 F.3d 1284 (D.C. Cir. 1998). Thus, the defendant's burden is satisfied if he simply explains what he has done or produces evidence of legitimate, nondiscriminatory reasons for the action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

Importantly, the ultimate burden of persuading the court that the defendant intentionally discriminated remains at all times with the plaintiff under the McDonnell Douglas test. Barth v. Gelb, 2 F.3d 1180, 1185-86; St. Mary's, 509 U.S. at 507; Aka, 156 F.3d at 1288. Thus, even if a plaintiff establishes a prima facie case, the employer prevails unless the employee succeeds in discrediting the employer's explanation. See Sami v. Billington, 195 F.3d 1, 3 (D.C. Cir. 1999). To do so, the plaintiff must present objective evidence that undermines the defendant's proffered explanation for its actions and/or independent evidence of the employer's discriminatory intent. See Aka, 156 F.3d at 1289. Moreover, even if a plaintiff creates a genuine issue of material fact with

---

[1] Defendant's burden is a "relatively light burden," Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994), and it "need not persuade the Court that it was actually motivated by the proffered reasons." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). See also St. Mary's, 509 U.S. at 509 ("[T]he determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment.").

8

respect to the employer's proffered reason, he will not always be deemed to have presented enough evidence to survive summary judgment. Id. at 1290. A "weak issue of material fact" regarding the employer's explanation will not prevail in the face of "abundant independent evidence" showing that no discrimination has occurred. Id. at 1291.

> ### 2.    Plaintiff fails to make a prima facie case of either race or age discrimination.

To succeed on a claim of disparate treatment, the plaintiff must prove that the employer acted with a discriminatory intent or motive in administering its employment practices. Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 986 (1988). Plaintiff has the initial burden of proving a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. To establish a prima facie case where plaintiff claims that he was not selected for a position for which he applied because of race, plaintiff must prove that: (1) he is a member of a protected group; (2) he was qualified for the job for which he applied; (3) he was not selected for the job; and (4) the job was filled by a person who is not a member of the protected group or the position remained open and the employer continued to seek applications from persons with plaintiff's qualifications. See Brown v.Small, 437 F.Supp.2d 125, 130 (D.D.C. 2006); Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 317 (5th Cir.2004).

Plaintiff fails to prove a prima facie case of either race or age discrimination and has provided no evidence of pretext for Defendant's non-selection of him. Although Plaintiff has shown that he was a member of a protected class (African American), DSMF ¶ 65, and that he was not selected for the job, DSMF at ¶ 56, he fails to prove either that he was qualified for the job or that Defendant left the job open and continued to seek applications from people with his qualifications. The evidence

shows that Plaintiff's non-selection was the result of Defendant's legitimate business decision and that discrimination was entirely absent from this decision.

According to the Complaint, the job at issue in this case appears to be Lead Patient Advocate. See Complaint ¶¶ 12, 20. Plaintiff was not qualified for that position. To the extent that Plaintiff may be challenging his non-selection for Director, he was likewise not qualified for that position. The nature of Plaintiff's disqualifications for both positions is both procedural and substantive.

Plaintiff was not qualified for the position of Lead Patient Advocate. There was no vacancy for that position. During all times relevant to this case, William Sivley held the position of Lead Patient Advocate. DSMF at 51. Plaintiff does not claim and has never claimed that he is more qualified than Sivley for the position of Lead Patient Advocate. DSMF ¶ 81.

Plaintiff also did not qualify to be Director under MCD 04-35A because that job announcement was cancelled. DSMF at ¶ 53. Thus, Plaintiff could not qualify for a cancelled job (a job that did not exist). When Defendant readvertised the Director's position after Nancy Benjamin ("Benjamin") declined that position, Defendant was not seeking applications from people with Plaintiff's qualifications, but, rather, was seeking people with better qualifications. In fact, VAMC Executive Officer Terry Ross ("Ross") readvertised Director, Office of Lead Patient Advocate because Plaintiff was not qualified. DSMF at ¶¶ 43, 44, 46.

Discrimination can be inferred from either a decision being made that is not based on standard operating procedures or policies, or when other similarly situated employees who are not members of Plaintiff's protected class are treated differently. See Davis v. Ashcroft, 355 F. Supp. 2d 330, 349 (D.D.C. 2005). This Circuit has adopted the standard articulated in Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994), when examining whether a Plaintiff

is similarly situated with another employee.  Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995).  See also Carter v. Rubin, 14 F. Supp. 2d 22, 38 (D.D.C. 1998).  The Pierce standard is as follows: "In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the white employees who he alleges were treated more favorably.  The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances." Carter, 14 F. Supp. 2d at 38 (quoting Pierce, 40 F.3d at 802) (citations omitted).

Sivley and Plaintiff were not similarly situated.  They were not similar in "all relevant aspects of their respective employment circumstances."  They held different positions on the alleged date of non-selection (October 21, 2004).  On that date, Sivley was Lead Patient Advocate and had been the Lead Patient Advocate since 2000 (DSMF at ¶ 7, 51) while Plaintiff was Education Specialist, GS-12 (DSMF at ¶ 2).  Sivley was selected over Plaintiff when both applied for the Lead Patient Advocate position in 2000.  DSMF at ¶¶ 7, 56.  Significantly, Plaintiff stated that **he** did not believe that any discriminatory or retaliatory animus tainted that selection.  DSMF at ¶ 56.  Sivley was Plaintiff's direct supervisor.  Id.  Plaintiff had no concerns about Sivley's competence as a supervisor.  Id.  Even though Sivley served on active military duty and was detailed to the Fiscal unit upon his return, he still remained Lead Patient Advocate at all times relevant to this suit.  DSMF at ¶¶ 7, 51.  Defendant did not leave Job Vacancy Announcement 04-35A open and continue to seek applications from persons with Plaintiff's qualifications.  Instead, 04-35A was cancelled and Sivley

resumed the duties of his assigned position, Lead Patient Advocate.  DSMF at ¶ 53.  Thus, Plaintiff

fails to establish a prima facie case of race based discrimination.

Plaintiff also has not established a prima facie case of age based discrimination.  Such a

prima facie case requires four elements:  (1) plaintiff belongs to the statutorily protected age group

(over 40), (2) plaintiff was qualified for the position, (3) plaintiff was not hired, and (4) plaintiff was

disadvantaged in favor of a younger person.  May v. Shuttle, Inc., 129 F.3d 165, 172 (D.C. Cir. 1997)

(citing Cuddy v. Carmen, 694 F.2d 853, 856-58 (D.C.Cir.1982)).  "To raise an inference of

discrimination by showing that a younger person was favored, a plaintiff must point to a worker with

a 'significant' or 'substantial' difference in age."  Beeck v. Federal Express Corp., 81 F. Supp. 2d 48,

53-54 (D.D.C. 2001)(citing O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996)).

Reese v. Potter, 2005 WL 3274052 at *5 n.6, (D.D.C. September 28, 2005)(finding an age difference

of seven years significant for Plaintiff's prima facie case).  Similar to his race based claim, Plaintiff's

sole evidence is that the selectee (Sivley) is at least ten years younger than him, and he obtained the

position without having to apply for it.  DSMF at ¶ 75.  The fact that Sivley is younger than Plaintiff

greatly diminishes in importance when one considers that only two months before Defendant had

selected a candidate that was older than Plaintiff for the position of Director, Office  of Patient

Advocacy.  Ross selected Benjamin over Plaintiff for Vacancy Announcement MCD 04-35 but

Benjamin declined.  DSMF at ¶ 42, 43.  Benjamin was more than two years older than Plaintiff.

DSMF at ¶ 40.  In addition,  Sivley would have no reason to interview for a position that he had

continuously held since 2000.  DSMF at  ¶¶7, 51.  As previouly stated, Sivley's detail to the Fiscal

unit did not result in his removal from the position of Lead Patient Advocate.  DSMF at ¶¶51-52.

12

Although management planned on abolishing Sivley's position, it never carried out this plan. DSMF at ¶ 51.

### 3. Plaintiff Has Failed to Show that Defendant's Legitimate Business Reasons for His Non-Selection are Pretextual.

Even if Plaintiff has established a prima facie case of age and race discrimination, Defendant had legitimate business reasons for its decision that are well-supported by concrete, undisputable facts and evidence. Pretext may be established "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S.Ct. 1089. "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason." Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C.Cir.1996) (quoting Pignato v. Am. Trans Air, Inc., 14 F.3d 342, 349 (7th Cir.1994)) (internal quotation marks omitted).

In evaluating pretext, the court must be careful not to second-guess business decisions made by employers, in the absence of some evidence of impermissible motives. "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason." Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C.Cir.1996) (quoting Pignato v. Am. Trans Air, Inc., 14 F.3d 342, 349 (7th Cir.1994)). "Once the employer has articulated a nondiscriminatory explanation for its action, ... the issue is not the correctness or desirability of [the] reasons offered ... [but] whether the employer honestly believes in the reasons it offers." Id. (internal quotations and citations omitted). A district court judge does not sit as a "super-personnel department that reexamines an entity's business decisions." Id. See also Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir.2004); Lucas v. Dover Corp., Norris Div., 857

13

F.2d 1397, 1403-04 (10th Cir.1988). Title VII does not require an employer's business decisions to be wise or logical-just nondiscriminatory. Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1169 (10th Cir.1998). Thus, the sole question is whether this judgment is so implausible, incoherent, weak, inconsistent, or contradictory that a rational fact finder could conclude the reasons were unworthy of belief. Stover, 382 F.3d at 1076.

Evidence of pretext alone may, but does not always, sustain a fact-finder's determination of unlawful discrimination. Raggs v. Mississippi Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002). Moreover, a plaintiff cannot always avoid summary judgment simply by showing the employer's explanation to be false. Aka v. Washington Hospital Center, 156 F.3d 1284, 1292 (D.C. Cir. 1998). See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 148 (2000). Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case." Aka, 156 F.3d at 1293.

Evidence, consisting solely of the plaintiff's unsupported allegations, is insufficient to deny a defendant's motion for summary judgment. See Exxon Corp. v. Federal Trade Commission, 663 F.2d 120 (D.C. Cir. 1980) (quoting Marks v. United States Dept. of Justice, 578 F.2d 261, 263 (9th Cir. 1978).(It is well settled that "(c)onclusory allegations unsupported by factual data will not create a triable issue of fact."). Personal speculation of discriminatory intent or unsubstantiated allegations cannot create a factual issue of pretext. Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999). A denial of a defendant's articulated reason without substantiation for the denial also is insufficient. Phillips v. Holladay Prop. Serv., Inc., 937 F. Supp. 32, 35, n.2 (D.D.C. 1996), aff'd, 1997 WL 411695 (D.C. Cir. 1997).

14

No rational trier of fact finder could conclude that Defendant's legitimate, non-discriminatory reasons for not selecting Plaintiff for either the Lead Advocate Position or the Director's position were pretextual. It strains credulity to allege that returning an employee from a detail to his job of record could constitute discrimination. Such an action is patently innocuous, routine, and non-discriminatory. Likewise, selecting official Terry Ross' proffered reasons for non-selection of Plaintiff were not pretext for either race or age discrimination. See Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1410-11 (9th Cir.1987); Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993). (The Supreme Court plainly has stated that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age."). Ross clearly articulated sound, credible reasons for believing that Plaintiff was "not the right person for the job" of Director: his lack of managerial experience and his failure to demonstrate a proficiency with graphs and charts. DSMF at ¶ 41. Benjamin and Sivley both had more experience with graphs than did Plaintiff. DSMF at ¶¶ 36, 54, 55. Thus, there is ample evidence to support the legitimacy of Ross' reasons. See DSMF at ¶¶ 28, 33.

Because Defendant has stated legitimate, nondiscriminatory reasons for its conduct, the burden is on Plaintiff to demonstrate that the reasons offered are a pretext for discrimination. Reeves, 530 U.S. at 143. There is no evidence to show that Defendant's reasons are pretextual. Here, the record does not contain even the slightest evidence of discriminatory motive or intent. See Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 986 (1988) ( To succeed on a claim of disparate treatment, the plaintiff must prove that the employer acted with a discriminatory intent or motive in administering its employment practices.) Plaintiff offers no evidence of any racial animus or age based animus towards him at any stage in the selection process for either Lead Advocate Position

or Director, Office of Patient Advocacy.   There was no non-selection for the Lead Patient Advocate Position on October 21, 2004 because that position had not been vacant since the selection of Sivley in 2000.   With regard to the Director's position, Plaintiff unequivocally disavowed any discrimination by the Human Resource Department (DSMF ¶ 23) and the rating and ranking panel (DSMF ¶ 31).  While Ross was aware of Plaintiff's race, she was not aware of his age.  DSMF ¶ 76. Plaintiff does not know for certain whether Ross was aware of his age.  Instead he merely assumes it based on her access to information.  DSMF ¶ 75.  His claims of race and age discrimination are nothing more than bald assertions.  At most, he rests his claims solely on the race and age of the selectee.  See DSMJ  ¶¶ 65, 77.

"[I]f [plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [plaintiff]."   Paquin v. Fed. Nat'l Mortgage Ass'n, 119 F.3d 23, 27-28 (D.C.Cir.1997).   Thus, viewing the facts in a light most favorable to Plaintiff, Plaintiff cannot demonstrate pretext on these facts.

Plaintiff has failed to establish a prima facie case of either race or age discrimination.  He has not shown that the Defendant's proffered reasons are pretextual.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim of race discrimination under Title VII and age discrimination under the ADEA.

### B.    Plaintiff's Claim of Disability Discrimination Fails Because He Admits that His Non-Selection Had Nothing to Do with his Disability.

The Complaint alleges discrimination based on disability but provides no statutory basis for this allegation.  See Complaint at ¶ 20.  The only possible basis for this claim could be the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq.

To establish a prima facie case of discrimination under the Rehabilitation Act for failure to accommodate, a plaintiff must show (1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. Edwards v. U.S. E.P.A., – F. Supp. 2d –, 2006 WL 2965507, *20 (D.D.C. Oct. 18, 2006); Thompson v. Rice, 422 F. Supp. 2d 158, 165-66 (D.D.C.2006). Thus, the two-fold threshold question under the Rehabilitation Act is (1) whether a plaintiff is an individual with a disability who (2) is "otherwise qualified" to perform his or her job. Mack v. Strauss, 134 F. Supp. 2d 103, 109 (D.D.C.), aff'd, 2001 WL 1286263 (D.C. Cir. 2001). See also 29 U.S.C. § 794(a).

Plaintiff has failed to establish a prima facie case under the Rehabilitation Act. He failed to allege any of the elements in his Complaint. Plaintiff has presented ***no record evidence*** to establish that he was disabled under the Rehabilitation Act. Evidence of an impairment, such as a medical diagnosis, is insufficient by itself to establish a disability, as not all impairments are disabilities for purposes of the Rehabilitation Act or the ADA. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002); Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999); Albertson, Inc. v. Kirkingburg, 527 U.S. 555, 565 (1999). Thus, those claiming protection under the Rehabilitation Act must do more than submit statements of a medical diagnosis; they must prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial. Toyota, 534 U.S. at 198. Under Toyota, the courts must focus their inquiry on whether a person's impairment limits activities that are "central to most people's daily lives," such as bathing, feeding oneself, etc. Id. at 201-02.

17

Plaintiff, an 80% Service Connected Veteran, stated that his disabilities include his back, shoulder, knees, and feet.  DSMF ¶ 66.  The injuries to his feet and knees prevent prolonged standing.  DSMF at ¶ 67.  He also has gout attacks every couple of months.  Id.  Plaintiff takes medication for joint pain and gout.  Id.  Plaintiff has had three shoulder surgeries and the range of motion for his left arm has decreased but the range of motion of the right arm is alright.  DSMF at ¶ 68.  Plaintiff's shoulder injury prevents him from doing any heavy lifting.  Id.  Plaintiff's back acts up when he over exerts himself and his back condition prevents prolonged sitting.  DSMF ¶ 69.  These injuries do not prevent him from driving or doing any household chores.  DSMF ¶ 70.  Plaintiff's impairments do not limit activities that are "central to most people's daily lives."  Thus, he is not disabled under the Rehabilitation Act.

Plaintiff has all but conceded the remaining three elements of the prima facie case.  Defendant had no notice of Plaintiff's disabilities.  Ross did not know that Plaintiff was disabled.  Written Affidavit of Terry Ross, ("Ross Affidavit"), page 5, Answer to Question 21.  Plaintiff never provided Ross, who was the selecting official for the position at issue, with any medical documentation regarding his disabilities.  Instead, he only supplied her with materials concerning special hiring privileges because of his disabilities.  DSMF ¶¶ 73.  Plaintiff provided nothing to Ross or VAMC Director Sanford Garfunkel ("Garfunkel") that mentioned his injuries or limitations.  Id.

Defendant never refused to make reasonable accommodations so that Plaintiff could perform his job.  There are no essential duties of Plaintiff's job that he is unable to perform because of his disability.  DSMF ¶ 71.  Plaintiff did not need accommodations because his job did not require "a lot of walking or a lot of standing or a lot of sitting at any given time."  DSMF ¶ 72.  Plaintiff never asked either Ross or Garfunkel  to accommodate his disabilities.  DSMF ¶ 73.

Moreover, Plaintiff did not claim that either Ms. Ross or Mr. Garfunkel failed to give him the position because he was disabled.  DSMF ¶ 74.  Thus, through his own deposition testimony, Plaintiff disavows that his disability played any role in his non-selection.  And, as set forth above, Plaintiff has not demonstrated that the defendant's legitimate, non-discriminatory reasons for his non-selection are pretextual.

To the extent that Plaintiff even alleges a claim under the Rehabilitation Act, he has presented no evidence of this claim.  He fails to establish a prima facie case under the Rehabilitation Act.  He concedes that Defendant did not discriminate against him based on his disability. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim of race discrimination.

## III.    PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE HE HAS NOT SHOWN THAT DEFENDANT'S ACTIONS WERE BASED ON A RETALIATORY MOTIVE.

Plaintiff's attempt to have this Court second guess Defendant's legitimate actions and place him in a position held by another employee since 2000 does not end with baseless claims of discrimination.  Instead of accepting the legitimate reasons for his non-selections put forth by the selecting official and others, Plaintiff further attempts to impugn these reasons with a wholly unsupported allegation of retaliation.  For many of the same reasons set forth above in Section II, this Court should also grant summary judgment in favor of Defendant on Plaintiff's retaliation claim.

### A.    Standard for Assessing A Retaliation Claim

In addition to prohibiting discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment  on the basis of  race, color, religion, sex, or national origin, Title VII also prohibits retaliation by employers against employees for opposing practices made unlawful under Title VII or for participating in any proceeding relating to such claims.  42 U.S.C. § 2000e-3.

A plaintiff establishes a prima facie case of retaliation or reprisal by demonstrating that (1) he engaged in protected behavior; (2) the employer took a materially adverse action against plaintiff that a reasonable employee would believe was designed to dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) there is a causal link between the adverse action and the protected activity.[2] Rochon v. Gonzales, 438 F.3d 1211, 1219-20 (D.C. Cir. 2006). See also Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006). The D.C. Circuit recently clarified that Title VII's anti-retaliation provision pertains *only* to those employer actions that are materially adverse to a reasonable employee or applicant. Rochon, 438 F.3d at 1219-20. Therefore, a plaintiff must demonstrate "materially adverse consequences . . . such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm" which would have dissuaded a reasonable employee from making or supporting a charge of discrimination. Id. at 1219 (citing Brown, 199 F.3d at 457).

Like race discrimination claims under Title VII and age discrimination claims under ADEA, the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to claims of retaliation for protected EEO activity. See Holbrook v Reno, 196 F.3d 255, 263 (D.C. Cir. 1999) (citing Carney v. The American Univ., 151 F.3d 1090, 1094 (D.C. Cir. 1998)). If a prima facie case is established, the burden shifts to the employer. The employer must articulate a legitimate non-retaliatory reason for its action. Cones v. Shalala, 199 F.3d 512, 520-21 (D.C. Cir. 2000), citing Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d 1395, 1423 (D.C. Cir. 1988). This is a minimal burden on the employer and it is a burden of production, not a burden of

---

[2] Prior to Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006), and Rochon, a plaintiff was required to establish an adverse employment action to meet the second prong of the prima facie case test. See Mitchell v. Baldrige, 759 F.2d 80. 86 (D.C. Cir. 1985).

persuasion.  See Goss v. George Washington University, 942 F.Supp. 659, 663 (D.D.C. 1996).  If defendant meets this burden, Plaintiff then must show that Defendant's proffered reason is pretextual.

As set forth below, Plaintiff in this case cannot present sufficient evidence to defeat Defendant's motion for summary judgment with respect to his retaliation claim.

### B.    Plaintiff Fails to Establish a Prima Facie Case of Retaliation.

Plaintiff fails to present a prima facie case of retaliation.  Although Plaintiff satisfies the first prong of the three prong test since he did engage in protected behavior (prior EEO activity), he fails to satisfy the remaining elements.  Defendant did not take a materially adverse action against Plaintiff that a reasonable employee would believe was designed to dissuade a reasonable worker from making or supporting a charge of discrimination.  Also, even if Defendant did take an adverse action against Plaintiff, there is no causal link between the adverse action and the protected activity.

Defendant did not take a materially adverse action against Plaintiff.  While actions short of an outright firing can be adverse, not all personnel decisions with negative consequences for the employee necessarily satisfy the test.  Forkkio v. Powell, 306 F.3d 1127, 1130 (D.C. Cir. 2002).  Actions imposing purely subjective injuries, such as dissatisfaction, humiliation or loss of reputation, are not adverse actions.  Forkkio, 306 F.3d at 1130-31.  See Brown, 199 F.3d at 457 ("Mere idiosyncrasies of personal preference are not sufficient to create an injury."); Dickerson v. SecTek, Inc., 2002 WL 31545743, *4 (D.D.C. Nov. 13, 2002); Jones v. Billington, 12 F.Supp.2d 1, 13 (D.D.C.1997) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.") (citation and quotation marks omitted).

Plaintiff alleges that Defendant retaliated against him when he was "not selected for reannounced position of Program Specialist (Lead Patient Advocate), GS-13." Complaint at ¶ 20. The Lead Patient Advocate position was already held by Sivley. DSMF at ¶ 51. Certainly, an employer's refusal to select an employee for a position currently held by another employee, who has previously performed the job and has no plans of leaving that position, cannot be deemed an adverse action.

Even if Plaintiff can show that Defendant's non-selection was an adverse action, he still fails to establish his prima facie case of retaliation, because he has not produced a shred of evidence showing a causal connection between the adverse action and his protected activity.

Plaintiff's prior protected activity consists of two EEO filings against Defendant VAMC. DSMF ¶¶ 78, 85-90. Plaintiff filed his first EEO complaint with ORM on August 31, 1999. DSMF ¶ 85. He alleged that he was discriminated against on the basis of race and color (African American) in violation of Title VII when he applied for the position of Health System Specialist (GS 12/13) in the Radiology Department and was not selected. DSMF at ¶ 86. After failing to prevail at the administrative level, Plaintiff filed suit against the Defendant in U.S. District Court for the District of Columbia. Id. Ultimately, Plaintiff and Defendant settled the case for $75,000 in May, 2002. DSMF at ¶ 87.

Plaintiff's second EEO filing involved a consolidated complaint concerning discrimination and retaliation based on prior EEO activity. DSMF at ¶ 88. Plaintiff had filed two complaints - one on October 26, 2001 and another on April 5, 2002. Id. The consolidated claims involved Plaintiff's non-selections for Health Systems Specialist and Acting Lead Patient Advocate. DSMF at ¶ 89. On

22

April 28, 2003, this case was dismissed due to Plaintiff's failure to prosecute his case at the hearing stage.  DSMF at ¶ 90.

Plaintiff fails to show a causal connection between his non-selection and his prior EEO claims.  The essence of Plaintiff's retaliation claim is as follows:  "putting him [Sivley] back in a position that was abolished, that's obviously improper, and the fact that he [Sivley] was there the entire time the interview process was going on, that lend -- that led me to question possible intent. And the fact that it wasn't two other individuals of the six; it was me and one other, then they decided to put him back into position and no one ever told me why."  DSMF ¶ 83.

Every material allegation of Plaintiff's retaliation claim is incorrect.  Even though Defendant planned to abolish the position of Lead Patient Advocate, it was never abolished.  DSMF ¶ 51. Although Sivley was present during the interview process, he remained Lead Patient Advocate even while he was on detail in the Fiscal Service.  DSMF ¶¶ 51, 52.  Thus, Sivley was not put back in a position that was abolished but, rather, his detail ended and he returned to doing the duties of his record position.  Plaintiff never asked Ross, Garfunkel, or Sivley about this situation.  DSMF ¶ 84. When he did ask Human Resources they explained that Sivley was returning to his prior position. DSMF ¶ 84.  In addition to his allegations being false, Plaintiff's claim fails to establish a causal connection between his non-selection and his prior protected activity.  He merely makes a speculative assertion that these actions must be motivated by his prior activity.  See DSMF ¶ 83 (speaking of Defendant's "possible intent").

Plaintiff's failure to show a causal link is even more pronounced when one considers the undisputed fact that Terry Ross did not know anything about Plaintiff's prior EEO activities.  See DSMF ¶ 79.  Plaintiff admitted that he had "no idea" whether Terry Ross was aware of his prior

complaints. Id.. Plaintiff simply assumes that since Garfunkel "was listed as the responsible management official [sic] in my previous case and now one of the final interviewing officials for this job, Ms. Ross could have obtained knowledge at that point." Id. Ross cancelled MCD 04-35A. Ross Depo. at 36:14-19. Plaintiff arguably (though unclearly) alleges that this was an adverse action since the cancellation resulted in his non-selection. See Complaint at ¶ 20. In addition, Ross was the selecting official for MCD 04-35, whose cancellation resulted in the MCD 04-35A vacancy announcement. DSMF ¶¶ 32, 46 (Ross did not believe that Plaintiff was qualified for MCD 04-35 so she advertised the position again as MCD 04-35A). However, Plaintiff fails to show a causal connection between his non-selection and his prior EEO activity, because it is impossible to retaliate against Plaintiff for his prior activity when Ross had no knowledge of that activity.

Moreover, the timing of the alleged adverse action does not raise an inference of retaliation. Plaintiff's prior EEO activity all occurred before Ross' arrival at VAMC in March 2003. See Ross Affidavit, page 2, Answer to Question 2 ("I started at the medical center in March 2003). Furthermore, that activity occurred a year and a half before the date of the adverse action in the instant case (October 21, 2004). See Complaint at ¶ 20 (for date of the adverse action in this case). Plaintiff filed his first EEO Complaint on August 31, 1999. DSMF at ¶ 85. Plaintiff filed his last EEO case against Defendant on April 5, 2002. DSMF at ¶ 88. The case was dismissed by the EEOC for failure to prosecute on April 28, 2003. DSMF at ¶ 90. Accordingly, the date of plaintiff's protected activity could be no later than April 2003. But the alleged adverse action at issue here took place in October 2004 – eighteen months later. This eighteen month gap in time raised no inference of retaliation whatsoever. Mayers v. Laborers' Health & Safety Fund of North America, --- F.3d ----, 2007 WL 623641 (D.C. Cir. 2007) (holding that "an eight- or nine-month gap" between the final

protected activity and the alleged adverse action is far too long to be evidence of causation). See also Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 1511 (noting that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'" and citing e.g., Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (C.A.10 1997) (3-month period insufficient)).

Plaintiff fails to establish a prima facie case for retaliation. He suffered no adverse action when he was not given a job that had been continuously occupied by another employee for nearly four years. Also, Plaintiff cannot show a causal relationship between his alleged adverse action (non-selection) and his prior EEO activity because he bases his argument on incorrect assertions; he fails to show that the alleged retaliating official had any knowledge of his prior EEO activity; and Plaintiff's prior EEO activity lacked temporal proximity with his non-selection. Plaintiff's failure to establish a prima facie of retaliation warrants a grant of summary judgment to Defendant.

### C.    Plaintiff Offers No Evidence that Shows Defendant's Legitimate Reason for His Non-Selection to Be Pretextual.

Plaintiff's attempt to show the causal link essentially collapses into an assertion that Defendant's legitimate reasons for his non- selection are pretextual. In addition to putting forth incorrect facts and speculation, Plaintiff also submits his own subjective assessment of his qualifications as evidence of retaliation. Plaintiff's flimsy evidence is legally insufficient and fails to show either a causal link or pretext.

Plaintiff's evidence of retaliation consists of Defendant's alleged grand scheme to deprive him of the Lead Patient Advocate position. This grand scheme involved the creation of the Director,

25

Office of Patient Advocacy, the subsequent cancellation of that position, and the resumption of the

duties of Lead Patient Advocate by the holder of that position.  See DSMF ¶ 83.

Plaintiff presents no evidence to show that Defendant retaliated against him when he first

applied for Director, Office of Patient Advocacy (MCD 04-23) and was deemed unqualified because

he did not meet the time in grade restrictions.  See DSMF ¶¶ 20, 23.  This determination was not

made by either Ross or Garfunkel but rather was made by the Office of Human Resources, which

"makes referral of applicants who meet qualification requirements."  DSMF ¶ 21.  Indeed, Plaintiff

admitted "I have no grounds to say that they [Human Resources] discriminated" against him when

they determined that he was not qualified for Job Announcement # MCD 04-23.  DSMF ¶ 23.

The next link in Plaintiff's chain of evidence of alleged retaliation concerns Vacancy

Announcement # MCD 04-35.  Plaintiff asserts that his non-selection for MCD 04-35 is further

evidence of retaliatory motive.  He supports this assertion with his own subjective assessment of his

credentials as compared to those of the selectee for MCD 04-35, Nancy Benjamin.  DSMF ¶ 80.

Plaintiff opines that he was more qualified than Benjamin because he had experience in an office of

patient advocacy, while she ran a Spinal Cord Injury Unit.  Id.

Plaintiff's personal appraisal of his credentials is  totally irrelevant to his retaliation claim.

Plaintiff cannot establish pretext simply based on his subjective assessment of his own performance,

for "plaintiff's perception of himself, and of his work performance, is not relevant."  Waterhouse v.

District of Columbia, 124 F. Supp. 2d 1, 7 (D.D.C. 2000) (citation omitted).  "Plaintiff's subjective

belief of qualifications is not evidence that can be used to establish that she was qualified for the

job."  Harris v. University of the District of Columbia, No. 87-2631 (LFO), 1990 WL 99316 at *5

(D.D.C. July 6, 1990) (citing Morse v. ATT Information Systems, 703 F. Supp. 1072, 1083

26

(S.D.N.Y. 1989)); <u>see also</u> <u>Carberry v. Monarch Marking Systems, Inc.</u>, 30 Fed. Appx. 389, 393,

2002 WL 220634 at *3 (6th Cir. Feb. 11, 2002) ("If plaintiff had merely given his own subjective

opinion that he was better qualified then Mr. Driscoll, he would not have presented a jury issue");

<u>Holt v. KMI-Continental, Inc.</u>, 95 F.3d 123, 129 (2d Cir. 1996) (cannot show pretext merely by

asserting "personal belief" as to most qualified person); <u>Johnson v. University of Wisconsin at Eau</u>

<u>Claire</u>, 70 F.3d 469, 481 (7th Cir. 1995); <u>Branson v. Price River Coal Co.</u>, 853 F.2d 768, 772 (10th

Cir. 1988) ("It is the perception of the decision maker which is relevant [to determining pretext], not

plaintiff's perception of herself.").

 As the decisionmaker, it is Terry Ross' perception of the qualifications of Plaintiff and

Benjamin that is relevant to this inquiry.  While Ross' assessment of these two candidates was

contrary to the Plaintiff's assessment, it was congruent with the perceptions of other participants in

the selection process for MCD 04-35.  There was nothing inequitable or unfair about Ross' treatment

of the candidates.  She interviewed both candidates and asked them the same questions.  DSMF ¶

32, 33 (Plaintiff stated that Ross had a "structured list of questions.").  During the interview, Ross

did not mention anything about Plaintiff's prior EEO activity. She did, however, ask him about his

ability to do graphs.  DSMF ¶¶ 34, 37.  After her interview with Plaintiff, Ross concluded that he

lacked skills that were "imperative" to the position of Director, Office of Patient Advocacy.  DSMF

¶ 35.  Specifically, Plaintiff failed to show either that he had significant experience in leading a

program or that he had significant experience in using graphs and charts to present data.  <u>Id.</u>  After

her interview with Benjamin, Ross determined that Benjamin was "far more qualified" for the

position than Plaintiff because she "was clearly able to demonstrate how she has run a program, and

provided detailed explanations of her experience in using charts and graphs to present data."  DSMF

27

¶ 36. The reasons provided by Ross are clearly rational, cogent, legitimate, and non-discriminatory since the position of Director, Office of Patient Advocacy involved running a major program and using charts and graphs to provide analysis for patient satisfaction. See DSMF ¶ 47.

Ross was not the only person who found Benjamin's qualifications to be superior to Plaintiff's qualifications. The rating and ranking panel and Sanford Garfunkel (Director of VAMC) likewise found Benjamin to be more qualified than Plaintiff. See DSMF ¶¶ 28, 39, 41. In July 2002, a five member rating and ranking panel was convened to review, rate, and perform interviews of the six candidates that were on the certificate submitted by Human Resources to Ross in mid June 2004. See DSMF ¶¶ 26, 27. Once the rating panel had interviewed, ranked, and rated the candidates, they submitted their ratings to Ross. DSMF ¶ 28. The panel ranked the top two candidates as follows: (1) Nancy Benjamin ("Benjamin"), Coordinator, Spinal Cord Injury & Disease Clinic, VA Western New York Healthcare System (174 points) and (2) Plaintiff (150 points). Id. The panel also provided comments about the candidates. DSMF ¶ 29. While the panel praised Benjamin for her management experience and her emphasis on team work, they noted Plaintiff lacked management experience and showed no "true insight" into team work. Id. Plaintiff did not believe that anyone on the panel or the panel as a whole discriminated against him. DSMF ¶ 31. Thus, both the panel and Ross found Benjamin to be more qualified than Plaintiff for some of the same key reasons.

Similarly, Garfunkel echoed Ross and the panel in his assessment of Plaintiff's qualifications. See DSMF ¶¶ 39-41. Like Ross and the panel, Garfunkel interviewed both candidates. DSMF ¶ 38. Garfunkel determined that Benjamin had a better approach to the position. DSMF ¶ 39. He thought that Plaintiff's "answers to the questions really showed no insight into the program or how the program could grow or how he would be a successful leader in the program."

Id. After the interview, Garfunkel concluded that he "not think he [Plaintiff] was the candidate that I would want in that job." Id.

The reasons provided by Ross, the panel, and Garfunkel constitute legitimate, nondiscriminatory reasons for Defendant's non-selection of Plaintiff for MCD 04-35. See Carter v. George Washington Univ., 387 F.3d 872, 880 (D.C.Cir.2004) (holding that plaintiff had failed to rebut employer's proffered legitimate, nondiscriminatory reason for plaintiff's non-selection that she "interviewed poorly"); Stewart v. Ashcroft, 352 F.3d 422, 428-29 (D.C.Cir.2003) (finding that superior managerial qualifications of a chosen applicant was a legitimate, nondiscriminatory reason for plaintiff's non-selection). An employer has discretion to choose among qualified candidates for a position, and absent a demonstrably discriminatory motive, courts lack the authority to second-guess what nondiscriminatory qualities-in this case, supervisory experience-it will seek in filling a position. See Burdine, 450 U.S. at 259, 101 S.Ct. 1089; Fischbach, 86 F.3d at 1183; Stewart, 352 F.3d at 429.

The final chapter in Plaintiff's saga of alleged retaliation culminates in his non-selection for Vacancy Announcement 04-35A. Like all of Defendant's actions regarding the events surrounding Plaintiff's non-selection, every single action taken by Defendant vis-a-vis this Vacancy Announcement was legitimate and entirely free of any retaliatory motive. Ross reannounced the Director's position under 04-35A because Benjamin declined that position and Ross did not believe that Plaintiff was qualified. DSMF ¶ 43, 44, 46. As previously noted, others shared Ross' concerns about Plaintiff's qualifications. When Sivley decided that he would like to work full time in the Patient Advocate Office and management agreed, he resumed the duties of his position of record (Lead Patient Advocate), MCD 04-35A was cancelled, and the (never filled) position of Director,

29

Office of Patient Advocacy was abolished. <u>See</u> DSMF ¶ 53. In essence, Plaintiff questions the legitimacy of cancelling MCD 04-35A and returning Sivley to his position of record, maintaining that these actions show a retaliatory motive. DSMF ¶ 83.

The decision to allow Sivley to begin working at the duties of his assigned position and the consequent cancellation of MCD 04-35A are clearly legitimate and non-retaliatory. Management has every right to order employees to do the assigned duties of their position. Sivley's qualifications to be Lead Patient Advocate are not in dispute. Plaintiff does not now and has never maintained that he was more qualified than Sivley to be Lead Patient Advocate. DSMF ¶ 81. Even Plaintiff has glowing words for Sivley's performance. Plaintiff readily admitted that Sivley's skill with statistics and graphs significantly surpassed his own. <u>See</u> DMSF ¶ 55 (Plaintiff notes while he "did not do statistics," Sivley was a statistician and that 80% of the Patient Advocates across the country cannot do the graphs that Sivley does.). Sivley was selected over Plaintiff when he and Plaintiff completed for the Lead Advocate Position in 2000. DMSF ¶¶ 7, 56. Plaintiff did not think that any discrimination had occurred in that selection. DMSF ¶ 56. He had no concerns about Sivley's competence. <u>Id.</u> All in all, Plaintiff is Defendant's best witness for showing that ordering Sivley to perform the duties of his position of record is legitimate and non-retaliatory.

*                    *                    *

Plaintiff has failed to establish a prima facie case for retaliation. Defendant took no adverse action against Defendant when it returned a current employee to his position of record. In addition, Plaintiff has provided no causal link between his non-selection and his prior EEO activity. Even if Plaintiff has established a prima facie case (which he has not), he has failed to put forth any

30

evidence to rebut Defendant's legitimate business reasons.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claims.

## **CONCLUSION**

For the above reasons, and any which may be presented in Defendant's reply brief, Defendant's Motion to Dismiss or,  in the Alternative, Motion for Summary Judgment should be granted and this matter should be dismissed.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, DC Bar #489610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____/s/_____
ALEXANDER D. SHOAIBI,   Bar #423587
Assistant United States Attorney
Judiciary Center Building – Civil Division
555 Fourth Street, N.W. – Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendant


April 9, 2007