**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF EMPLOYMENT DISCRIMINATION COMPLAINT ADJUDICATION**
**WASHINGTON, D.C. 20420**

| | |
|---|---|
| Keith Pierce<br>*Complainant,*<br><br>v.<br><br>Secretary,<br>Department of Veterans Affairs<br><br>*Agency.* | VA Case No.: 2004-0688-2005100735 |

## FINAL AGENCY DECISION

### INTRODUCTION

In a formal EEO complaint dated January 13, 2005, the complainant alleged that officials at the VA Medical Center in Washington, D.C., discriminated against him as referenced below. The Department's Office of Resolution Management accepted and appropriately investigated one of the claims raised in the complaint and properly notified the Complainant of its determination to dismiss the remaining claims in accordance with the Commission's regulation governing dismissals at 29 C.F.R. Section 1614.107.

At the conclusion of the investigation, the Department notified the complainant in writing of the right to request either a hearing and decision by an EEOC administrative judge, with a subsequent final action by the Department, or an immediate final decision by the Department without a hearing. The complainant acknowledged receipt of that notice on August 2, 2005. According to the complaint file, the complainant failed to respond to that notice. Thus, the complaint file was forwarded to the Department's Office of Employment Discrimination Complaint Adjudication for an immediate final agency decision based on the investigative record. OEDCA received the file from ORM on October 7, 2005.

### PROCEDURAL DISMISSAL

The Department's Office of Resolution Management partially dismissed claims (A1), (A2), (B), (C1), (C2) and (C3), pursuant to 29 C.F.R. Section 1614.105(a)(2), relating to Complainant's failure to seek counseling within 45 days of the stated events. (See, partial dismissal letter dated April 14, 2005, at IF, A-6). Equal Employment Opportunity Commission (EEOC) Regulation 29 C.F.R. 1614.105(a) indicates that an aggrieved person must initiate contact with a counselor within 45 days of the date of the matter



alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action. Further, Section 1614.107(a)(2) provides that the agency shall dismiss a complaint that fails to comply with the applicable time limits contained in Section 1614.105. It is clear in this case that Complainant waited until December 6, 2004, to contact an EEO Counselor regarding the dismissed claims, exceeding the 45-day limitations, without provision of an adequate explanation for the delay. Accordingly, for the above stated reasons, it is the final decision of the Department to dismiss the aforementioned claims. The merits of the remaining claim raised in the complaint are addressed below.

## CLAIM

Whether management discriminated against the Complainant, based on race (Black), age (DOB: 5/18/55), reprisal (prior EEO activity) and disability (physical/unknown), when on October 21, 2004, it nonselected Complainant for the re-announced Program Specialist (Lead Patient Advocate) position, GS-13, pursuant to announcement # MCD 04-35A.[1]

## SUMMARY OF FACTS[2]

Complainant (African-American/Black, DOB: 5/18/55, prior EEO activity in 1999 and 2000, disability (service-connected, ten-point veteran for back, shoulder, knees and feet)) is a GS-11 Patient Advocate. Complainant states that he applied for the re-announced vacancy for the Director, Office of Patient Advocacy, GS-13, position, that Human Resources determined that he was qualified for the position, that he was interviewed twice for the position, but was ultimately non-selected when management favored the hire a younger, white candidate (Ms. NB, age 39). Complainant also states that, when Ms. NB declined the job offer, leaving him as the remaining best qualified candidate, instead of offering him the job, management again non-selected him by backfilling the job, inserting Mr. BS (white, age 38) (the former Lead Patient Advocate who had been on military duty) into his old job.

Complainant contends that his race, age, prior EEO activity and physical disability were the reasons behind his non-selection for the re-announced position. As for his disability, Complainant says he was injured in the military in 1989, and has a permanent disability (back, shoulder, knees and feet), which limits walking, prolonged standing, and sitting. Complainant indicates that he is a ten-point veteran (as annotated on his application). Complainant says that he takes medication for joint pain and gout and uses a cane for walking, but maintains that he can perform the essential functions of the re-announced

---

[1] The evidence shows that even after the selectee declined the job offer, management felt the Complainant was not right for the job, choosing instead to backfill the position with Mr. BS, the former Lead Patient Advocate. That choice by management appears to be ;actually significant, hence, we will address that aspect of the case in the pretext portion of the decision. However, we do not find that Complainant was non-selected twice in this case, because, in fact, the vacancy announcement was cancelled when management chose to reinstate Mr. BS.

[2] The factual summary and evidence shows that management withdrew its announcement in this case three times, but due to Complainant's failure to timely raise matters with an EEO Counselor, the first two cancellations are not before us on the merits and mention is only included as background data. As noted in the procedural dismissal portion of this decision, the only claim accepted pertains to his nonselection on or about October 21, 2004, when management chose Ms. NB, and after she declined, cancelled the vacancy announcement when management decided to fill the job with Mr. BS, the former Lead Patient Advocate.

position. As for his race, Complainant testifies that both Ms. TR (RMO) and Mr. SG (RMO) are Caucasian, that Ms. NB is white and Mr. BS is white. As for his age, Complainant states that Ms. NB is thirty-nine and Mr. BS is ten years younger than Complainant. As for his prior EEO activity (reprisal), Complainant testifies that Mr. SG was named as an RMO in one of his earlier EEO Complaints. (IF, B-1)

**Management's Witnesses**

**Ms. GN** (Black, age 59, no disability, prior EEO activity) is the Human Resources Manager and subject matter expert in this case. She says that she is unaware of Complainant's race, age and prior EEO activity. She says that, while she reviewed the qualifications of the candidates and referred them for interviews and consideration, she had no further involvement in the selection/non-selection process. She states that the first selectee (Ms. NB) declined the position. (IF, B-2)

**Ms. TR** (RMO1, Caucasian, age 47, no disability, prior EEO activity) states that the vacancy for the Program Specialist (Lead Patient Advocate) position, GS-13, was announced, withdrawn, and re-announced, and pursuant to the re-announcement, management interviewed the candidates, then gave second job interviews to two candidates: Ms. NB and Complainant. Ms. TR maintains that management chose to hire Ms. NB, who declined the job offer. Ms. TR specifically testifies that, while a rating and ranking panel identified Complainant and Ms. NB as the primary or best qualified candidates, she describes how when she interviewed the Complainant, she found that he was unable to show that he had any significant experience specifically in leading a program, nor was he able to portray that he had significant experience in using graphs and charts to present data, as was imperative to the position. On the other hand, the witness testifies that Ms. NB was clearly able to demonstrate how she could run a program and she provided detailed explanations of her experience, exhibiting both the knowledge and experience in presenting data using graphs and charts, making her more qualified for selection. (IF, B-3)

**Mr. SG** (RMO2, Caucasian, age 57, no disability prior EEO activity as RMO) states that he interviewed the Complainant, but determined that Complainant did not interview well, finding none of his answers to be satisfactory. Mr. SG testifies that, after the female candidate declined the job offer, Mr. BS (former Lead Patient Advocate, white, DOB: ▬▬ who had recently returned from military duty) agreed to return to his former Lead Patient Advocate position, obviating the need to hire under the announced vacancy. (IF, B-4)

Pertinent documents in this case include the following, to wit: (a) vacancy announcement, dated September 7, 2004 (IF, C-1); (b) e-mail, dated October 27, 2004, addressed to Complainant, stating that Mr. BS is returning to his former position of record on a permanent basis (rescinding the vacancy announcement) (IF, C-1, at p. 18); (c) Complainant's application, includes annotation and information of his qualification for hire under special hiring authority for 30% disabled veterans, and includes data showing that he has specialized experience inclusive of Patient Advocate for seven years and two months (1997-2004) (IF, C-3, at p. 1-43); (d) Ms. NB's application, showing that she had specialized experience as a Social Worker, GS-12, employed as the Spinal Cord Injury Coordinator for two years (2002-2004) (IF, C-3, at p. 44).

3

## ANALYSIS

### 1. Statement of Applicable Law

The law prohibiting discrimination based on race and reprisal is Title VII of the Civil Rights Act of 1964, as amended, Section 701 et seq., 42 U.S.C. 2000e et seq. ("Title VII"). Discrimination against persons forty years of age and over is prohibited by the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. Section 633a, as amended. The same pattern of analysis developed under Title VII has generally been applied to age discrimination cases. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 70 FEP Cases 486 (1996). The law prohibiting discrimination based on disability is the Rehabilitation Act of 1973 (the "Act"), as amended, 29 U.S.C. 706; 791 et seq. Complaints of disability discrimination alleging disparate treatment are analyzed using the analytical model developed under Title VII case law. Prewitt v. U.S. Postal Service, 662 F.2d 292, 27 FEP Cases 1043 (5th Cir. 1981). Federal sector equal employment opportunity regulations are set out in 29 C.F.R. Part 1614.

Generally, the adjudication of a complaint of discrimination alleging disparate treatment under Title VII, the Rehabilitation Act and the ADEA follows a three-step evidentiary analysis. First, the burden is on the complainant to establish a prima facie case of discrimination by a preponderance of the evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 5 FEP Cases 965 (1973); Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 18 FEP Cases 520 (1978); Furnco Construction Corporation v. Waters, 438 U.S. 567, 17 FEP Cases 1062 (1978). This means that the complainant must present a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination did occur. Teamsters v. U.S., 431 U.S. 324, 14 FEP Cases 1514 (1977). A complainant raises an inference of discrimination by showing that the reasons most commonly given by management to justify a particular employment decision or action do not apply in the complainant's case.

Second, if the complainant meets the burden of presenting a prima facie case, then management has a burden of production to articulate some legitimate, nondiscriminatory reason for its actions. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 25 FEP Cases 113 (1981). The evidence presented by management need not establish management's actual motivation, but must be sufficient to raise a genuine issue of material fact as to whether management discriminated against the complainant. If management meets this burden of production, the presumption of discrimination raised by the prima facie case is rebutted and drops from the case altogether. Burdine, 25 FEP Cases 116

Third, in order to prevail, the complainant must show by a preponderance of the evidence that management's stated reason is a pretext for discrimination. Price Waterhouse v. Hopkins, 490 U.S. 228, 49 FEP Cases 954 (1989); Burdine, 25 FEP Cases 116; McDonnell Douglas, supra. The complainant may show pretext by evidence that a discriminatory reason more likely than not motivated management, that management's articulated reasons are unworthy of belief, that management has a policy or practice disfavoring the complainant's protected class, that management has

4

discriminated against the complainant in the past, or that management has traditionally reacted improperly to legitimate civil rights activities. McDonnell Douglas, supra

The ultimate burden of showing that management intentionally discriminated against the complainant remains at all times with the complainant. United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 31 FEP Cases 609 (1983); Burdine, 25 FEP Cases 116. A finding of pretext - i.e., a finding of sufficient evidence to disbelieve management's stated reason for its decision - does not necessarily compel a finding of discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). Proof of pretext is simply one form of circumstantial evidence that is probative of intentional discrimination, and such proof may be quite persuasive. Thus, a complainant's prima facie case, when combined with sufficient evidence to find that management's asserted justification is false, may permit a finding of discrimination. Reeves v. Sanderson Plumbing Products, Inc., 82 FEP Cases 1748 (2000)

This is not to say that such a showing will always be adequate to find discrimination. As the Supreme Court noted in Reeves, there will certainly be instances where, despite such a showing, the record conclusively reveals some other nondiscriminatory reason for management's decision, or if the complainant presented only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred. Thus, for example, if the circumstances show that management gave a false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent. Reeves, supra (citing Fisher v. Vassar College, 114 F.3d 1332, 1338 (2nd Cir. 1997). Whether a finding of discrimination is appropriate in a particular case will depend on a number of factors, including the strength of the complainant's prima facie case, the probative value of the proof that management's explanation is false, and the strength of other evidence that discrimination did not occur. Reeves, supra

Moreover, the analytical framework in McDonnell Douglas "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." Furnco, 17 FEP Cases at 1066. Thus, whether or not a complainant has established a prima facie case, where management has provided a legitimate, nondiscriminatory explanation for its action, the factual inquiry must proceed to a decision on the ultimate factual issue in the case - i.e., whether management's actions were discriminatory within the meaning of Title VII. Aikens, supra

The elements of a prima facie case of discrimination are determined by the factual circumstances of the case and the bases of discrimination alleged. McDonnell Douglas, 5 FEP Cases 969 n.13. Here, the complainant alleged disparate treatment, based on race, age, disability and reprisal, when management non-selected him for an announced position.

In order to establish a prima facie case of disparate treatment, a complainant must show (1) membership in a protected class, (2) an employment situation comparable to that of other employees not of the same protected class, and (3) treatment that is different than that experienced by those other employees with respect to the terms,

5

conditions, or benefits of employment. McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 12 FEP Cases 1577 (1976); Scott v. Secretary of Defense, EEOC Appeal No. 01902727 (September 24, 1990)

Employees are in comparable employment situations when it is reasonable to believe that they would receive the same treatment in the context of a particular employment decision. See, Lindemann & Grossman, Employment Discrimination Law, 3rd Ed., Chapter 2, pp. 30-33 (1996). In order for comparative employees to be considered similarly situated, all relevant aspects of the complainant's situation must be nearly identical to those of the comparative employees. O'Neal v. Postmaster General, EEOC Request No. 05910490 (July 23, 1991); Powell v. Postmaster General, EEOC Appeal No. 01911979 (November 25, 1991). Thus, in order to be similarly situated, the comparative employees must have dealt with the same supervisor and have been subject to the same standards. Mitchell v. Toledo Hospital, 964 F.2d 577, 59 FEP Cases 76 (6th Cir. 1992).

Even in cases where there are no similarly situated employees, a complainant may be able to establish a prima facie case by showing: (1) membership in a protected class; (2) the occurrence of an adverse employment action; and (3) some evidence of a causal relationship between membership in the protected class and the adverse action. Ward v. U.S. Postal Service, EEOC Request No. 05920219 (June 11, 1992), citing Potter v. Goodwill Industries of Cleveland, 518 F.2d 864, FEP Cases (6th Cir. 1975) and Leftwich v. United States Steel Corporation, 470 F. Supp. 758 (W.D. Pa. 1979).

In order to prevail in an age discrimination claim under the ADEA, a complainant must generally show membership in the group of persons protected under the ADEA (i.e., persons age 40 or over); that the complainant was subjected to an adverse employment action; and that the complainant was disadvantaged in favor of a younger person. Simpson v. Midland-Ross Corp., 823 F.2d 937, 44 FEP Cases 418 (6th Cir. 1987); Polstorff v. Fletcher, 452 F.2d 17, 17 FEP Cases 123 (D. Ala. 1978) (citing Marshall v. Goodyear Tire & Rubber Co., 554 F.2d 730, 15 FEP Cases 139 (5th Cir. 1977). The younger person need not be outside the protected group, but must be sufficiently younger than the complainant to permit an inference of discrimination. O'Connor, supra

Employers may make subjective judgments for any reason that is not unlawfully discriminatory. The ADEA is not intended as a vehicle for review of business decisions. Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69, 27 FEP Cases 1563 (6th Cir. 1982). The question is not whether the employee was treated fairly but, rather, whether he or she was discriminated against on the basis of age. Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1118 n.3, 23 FEP Cases 1338 (6th Cir. 1980)

In cases involving reprisal, the criteria for establishing a prima facie case may require a showing that (1) the complainant engaged in a protected activity, (2) management was aware of the complainant's participation in the protected activity, (3) management effected some action which had an adverse impact on the complainant following the protected activity, and (4) the management action followed the protected activity within such a period of time that a retaliatory motive can be inferred. Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 11 FEP Cases 1426 (D. Mass. 1976), aff'd, 545 F.2d 222, 13 FEP Cases 804 (1st Cir. 1976)

As noted above, the Rehabilitation Act, 29 U.S.C. Section 701 et seq., and EEOC's implementing regulations prohibit discrimination against qualified individuals with disabilities. Allegations of disparate treatment due to a disability are analyzed according to the traditional burdens of proof in disparate treatment cases involving other prohibited bases. Prewitt v. U.S. Postal Service, 662 F.2d 292, 27 FEP Cases 1043, 1055, 1056 (5th Cir. 1981). To establish a prima facie case of disability discrimination under the disparate treatment theory, a complainant must generally show (1) the existence of a disability; (2) that he or she is a "qualified individual with a disability"; (3) knowledge by the employer of the disability; and (4) an adverse personnel action under circumstances giving rise to an inference of disability discrimination (e.g., treated differently than similarly situated employees who are not disabled or who have different disabilities). See, e.g., Prewitt, 27 FEP Cases at 1055; French v. Veterans Administration, EEOC Appeal No. 01850839 (1987); Oberg v. Sec'y of the Navy, EEOC Request No. 05890451 (1989).

A necessary component of a prima facie case of disability discrimination, regardless of the theory under which the claim is brought, is a showing that the complainant is a "qualified individual with a disability" within the meaning of the Act and EEOC's implementing regulations.[3] Subject to certain exceptions, the term **disability** means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of the individual; a record of such an impairment; or being regarded as having such an impairment. 29 C.F.R. Section 1630.2(g).[4]

The U.S. Supreme Court has defined the term **major life activities** as those activities that are of "central importance to daily life." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 122 S. Ct. 681, 691 (2002). Examples of such activities include functions such as performing manual tasks, walking, seeing, hearing, breathing, learning, and working. 29 C.F.R. Section 1630.2(i).

The term **substantially limits** means (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) a significant restriction as to the condition, manner, or duration under which an individual can perform a particular major life activity, as compared to the condition, manner, or duration under which the average person in the general population can perform that same activity. Section 1630.2(j)(1). Factors to consider in determining whether an individual is substantially limited in a major life activity are (i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment, and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. Section 1630.2(j)(2). In addition, both the positive and negative effects of corrective or mitigating measures, such as medicines or assistive or prosthetic

---

[3] The Commission's regulation implementing the Rehabilitation Act is codified at 29 C.F.R. Section 1614.203. For the most part, however, this regulation simply references the standards contained in the Americans with Disabilities Act of 1990 (ADA) and the Commission's ADA regulation, which is codified at 29 C.F.R. Part 1630. Pursuant to the Rehabilitation Act Amendments of 1992, interpretations of Titles I and V of the ADA, as they relate to employment discrimination, also apply to claims brought under the Rehabilitation Act. 29 U.S.C. Section 501(g).

[4] Exceptions to the definition of the term "disability" are set out at 29 C.F.R. Section 1630.3.

7

devices, must be considered when judging whether an impairment is substantially limiting. Moreover, compensating behaviors that mitigate the effects of an impairment must be considered. Sutton v. United Airlines, 119 S. Ct. 2139, 9 AD Cases 673 (1999); Murphy United Parcel Service, 119 S. Ct. 2133, 9 AD Cases 694 (1999); Albertsons v. Kirkingburg, 119 S. Ct. 2162, 9 AD Cases 694 (1999).

With respect to the major life activity of **performing manual tasks**, the U.S. Supreme Court has held that the focus is not on whether the individual is unable to perform tasks associated with a specific job. Rather, the focus is on whether the manual tasks in question "are central to daily life." Thus, the individual must have an impairment that prevents or significantly restricts the individual from doing activities that are of central importance to most people's daily lives, such as household chores, bathing, brushing one's teeth, dressing oneself, etc. Toyota, supra, at 691-693.

With respect to the major life activity of **working**, the term "substantially limits" means a significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes, as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. Section 1630.2(j)(3).[5]

The term **qualified individual with a disability** means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position. 29 C.F.R. Section 1630.2(m).[6]

The term **essential functions** means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position. 29 C.F.R. Section 1630.2(n).[7]

## 2. Discussion

*Prima Facie Case*

**Disparate Treatment**[8]

**Race and Age Discrimination**

---

[5] Factors to be considered in determining whether an individual is substantially limited in the major life activity of "working" are set out at 29 C.F.R. Section 1630.2(j)(3)(ii).

[6] Exceptions to the definition of the term "qualified individual with a disability" are set out at 29 C.F.R. Section 1630.3.

[7] Examples of reasons why a job function may be considered "essential", and evidence as to whether a particular job function is "essential" are set out at 29 C.F.R. Section 1630.2(n)(2) and (3).

[8] Although Complainant alleges that he should have been selected over Ms. NB, he also seems to be suggesting that he should have been selected over Mr. BS, who was returned to his former position. In any event, we find that the non-selection issue is limited to Ms. NB only for purposes of analysis in this case.

8

In the instant case, Complainant may establish a prima facie case of race and age discrimination concerning the claim alleged by proving by preponderant evidence that (1) he is a member of a protected group, (2) that he applied for an announced vacancy, (3) that he was deemed qualified for the job, (4) that he was not selected, and (5) that another similarly situated employee outside Complainant's protected group was selected for the announced position.

Complainant provides testimony indicating that he and Ms. NB (white, age 39) were considered to be the best qualified candidates, but management chose to hire Ms. NB, and he further shows that, when Ms. NB declined the offer, management backfilled the position using the former Lead Patient Advocate (Mr. BS, white, ten years younger than the Complainant). Under the circumstances, we find that Complainant establishes his prima facie case of race and age discrimination for his non-selection claim.

**Reprisal Discrimination**

In cases involving reprisal, the criteria for establishing a prima facie case requires a showing that (1) the complainant engaged in a protected activity, (2) management was aware of the complainant's participation in the protected activity, (3) management effected some action which had an adverse impact on the complainant following the protected activity, and (4) the management action followed the protected activity within such a period of time that a retaliatory motive can be inferred.

The evidence of record shows that Complainant filed prior EEO Complaints in 1999 and 2000, naming Mr. SG as one of the RMOs. The EEOC has generally held that passage of more than a year between the prior EEO activity and subsequent EEO claims is insufficient for inferring a retaliatory motive for purposes of reprisal. In the present case, the elapsed time between his prior EEO activity and his claim, dated October 21, 2004), is four and five years, respectively. Thus, we find that Complainant fails to establish his prima facie case of reprisal for the claim raised in this case.

<u>Disability Discrimination</u>[9]

The complainant claims that he was subjected to disparate treatment by virtue of his physical disability (back, shoulder, knees and feet), relating to his claim in this case. As noted above, the Rehabilitation Act, 29 U.S.C. Section 701 et seq., and EEOC's implementing regulations prohibit discrimination against qualified individuals with disabilities. Allegations of disparate treatment due to a disability are analyzed according to the traditional burdens of proof in disparate treatment cases involving other prohibited bases. <u>Prewitt v. U.S. Postal Service</u>, 662 F.2d 292, 27 FEP Cases 1043, 1055, 1056 (5th Cir. 1981). To establish a prima facie case of disability discrimination under the disparate treatment theory, a complainant must generally show (1) the existence of a disability; (2) that he or she is a "qualified individual with a disability"; (3) knowledge by the employer of the disability; and (4) an adverse personnel action under circumstances giving rise to an inference of disability discrimination (e.g., treated differently than similarly situated employees who are not disabled or who have different disabilities).

---

[9] Complainant has not alleged disability under a denial of reasonable accommodation theory; hence, we will limit our review of the claim under a disparate treatment theory.

9

See, e.g., Prewitt, 27 FEP Cases at 1055; French v. Veterans Administration, EEOC Appeal No. 01850839 (1987); Oberg v. Sec'y of the Navy, EEOC Request No. 05890451 (1989).

A necessary component of a prima facie case of disability discrimination, regardless of the theory under which the claim is brought, is a showing that the complainant is a "qualified individual with a disability" within the meaning of the Act and EEOC's implementing regulations. Subject to certain exceptions, the term **disability** means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of the individual; a record of such an impairment; or being regarded as having such an impairment. 29 C.F.R. Section 1630.2(g).

The U.S. Supreme Court has defined the term **major life activities** as those activities that are of "central importance to daily life." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 122 S. Ct. 681, 691 (2002). Examples of such activities include functions such as performing manual tasks, walking, seeing, hearing, breathing, learning, and working. 29 C.F.R. Section 1630.2(i).

### A. Has Complainant Established That He Has An Actual Disability Within the Meaning and Effect of the Rehabilitation Act?

While Complainant has presented some testimonial evidence and VA-rating evidence indicating that he has ongoing serious medical conditions, that requires use of medication and a cane, he fails to support his assertion that he has a permanent disability within the meaning and effect of the Rehabilitation Act with any professional medical documentation or other persuasive medical evidence. Moreover, a temporary disability, a VA-rated disability, or other medical condition, standing alone, is usually not sufficient evidence establishing a disability under the Act. Consequently, Complainant fails to establish this element of his prima facie case.

### B. Has Complainant Established That He Is a Qualified Individual With a Disability?

The term **qualified individual with a disability** means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position. 29 C.F.R. Section 1630.2(m).

For the reasons noted above, we find that Complainant has not established that he is a qualified individual with a disability.

### C. Knowledge of Complainant's Disability.

While we find that management had knowledge (or should have known) of his ten-point veterans preference status, that information is not sufficient for conferring knowledge of his alleged disability to management in this case. Ms. TR specifically testifies that she was not aware that Complainant had a disability and Mr. SG provides no information in the matter. Under the circumstances, we find that Complainant fails to shows that

10

management knew or perceived to have a disability under the Rehabilitation Act, and therefore, Complainant fails to establish this element of his prima facie case.

**D. Adverse Treatment**

Complainant shows that he applied, was found to be qualified, but was non-selected for a vacant supervisory position; hence, he establishes this element of his prima facie case.

However, for the reasons discussed above, we find that Complainant has not established all the requisite elements of his prima facie case of disability discrimination, under a disparate treatment theory, as to the matters raised in his EEO Complaint.

Nevertheless, we recognize that the complainant's burden to establish a prima facie case is not onerous. Furthermore, under the rule in Aikens, whether or not a complainant has established a prima facie case, where management has provided a legitimate, nondiscriminatory explanation for its action, the factual inquiry must proceed to a decision on the ultimate factual issue in the case -- i.e., whether management's actions were discriminatory within the meaning of Title VII. Thus, we continue our analysis despite the deficiencies in the complainant's prima facie evidence for his claim based on race, age, reprisal and disability.

**Management's Response**

As noted above and based on the foregoing discussion and a complete review of the record, we find that management has met its burden to articulate legitimate, nondiscriminatory reasons for its conduct toward the complainant. Thus, to prevail, the complainant must prove that these explanations are a pretext to mask prohibited discriminatory animus.

***Pretext***

In order to prevail, the Complainant must prove that the agency's articulated reasons for its actions are a pretext for what was, in actuality, a discriminatory decision or discriminatory treatment. However, the Complainant offers neither direct nor indirect evidence of pretext. Also, there is no evidence that management's articulated reasons are unworthy of belief.

While the ultimate burden of showing that management intentionally discriminated against him remains with Complainant, he has failed to prove pretext, that is, he has failed to establish by preponderant evidence that management's actions were motivated by his race, age, disability and prior EEO activity (reprisal), when management non-selected him for the announced vacancy in this case.

In a non-selection case, pretext may be demonstrated by showing that the Complainant's qualifications are observably superior to those of the selectee. Bauer v. Bailar, 647 F.2d 1037, 1048 (10th Cir. 1981) However, the Complainant has not shown that he was more qualified or more eligible than the selectee, Ms. for further review and consideration.

11

Complainant fails to refute management's substantial evidence supporting the reasons for not hiring him in this case. Complainant offered no persuasive evidence refuting the testimony provided by both RMOs, maintaining that, in his second job interview, the Complainant was (1) unable to show that he had significant experience specifically in leading a program, (2) that he was unable to portray that he had significant experience in using graphs and charts to present data, as was imperative to the position, (3) that he was unable to provide satisfactory answers to questions, and (4) that Ms. NB was a Social Worker with significant program coordinator experience, who was selected because she was able to demonstrate how she could run a program, that she provided detailed explanations of her experience, and that her knowledge and experience included presentations of data using graphs and charts. Complainant also does not refute management's evidence showing that, after Ms. NB declined the job offer, management determined that its best course of action was to backfill the position, by re-instating Mr. BS into the Lead Patient Advocate position after he returned from active duty, in large part, because management determined that the Complainant was not entirely suited or capable of performing the supervisory functions of the announced position. For these reasons, we find that Complainant offered too little evidence to support his contention that his non-selection was a cover for discrimination.

The Complainant must show that age was a determining factor in the decision not to select him for the above position. Age need not have been the sole reason, but must have made a difference in the decision. Greene v. Safeway Stores, Inc., 98 F.3d 554 (10th Cir. 1996); Lucas v. Dover, 857 F.2d 1397 (10th Cir. 1988); EEOC v. Sperry Corp., 852 F.2d 503 (10th Cir. 1988). However, we can find no evidence that age was a factor or made any difference in the qualification or selection process regarding the claim raised in this case. We also can find no evidence that his race, disability or prior EEO activity was a factor in any of management's decisions leading to his non-selection.

Other than general assertions that management's actions were based on discrimination, the complainant has not offered evidence to establish pretext. Generally, a complainant's testimony alone has been judged inadequate as proof to establish pretext. Bohrer v. Hanes Corporation, 715 F.2d 213, 32 FEP Cases 1578 (5th Cir. 1983), cert. denied, 465 U.S. 1026, 33 FEP Cases 1884 (1984). Furthermore, a complainant's subjective belief that the management actions at issue were the result of discrimination is insufficient to prove pretext. See, Bohrer, supra; Elliott v. Group Medical & Surgical Service, 714 F.2d 566, 32 FEP Cases 1451 (5th Cir. 1983), cert. denied, 467 U.S. 1215, 34 FEP Cases 1472 (1984).

Our finding that the complainant has not sustained his burden of persuasion is not an endorsement of the subject selections, but merely reflects the limited focus of our inquiry. We cannot substitute our judgment for the judgment and perceptions of the referring or selecting officials. It is not the place of a trier of fact to second-guess management's personnel decisions absent a demonstrably discriminatory motive. Loeb v. Textron, Inc., 20 FEP Cases 29 (1st Cir. 1979).

Title VII, the ADEA and the Rehabilitation Act do not protect against unfair business decisions, but only against decisions motivated by an unlawful animus. Turner v. Texas Instruments, Inc., 555 F.2d 1251, 15 FEP Cases 746, 750 (5th Cir. 1977). To

paraphrase the Burdine court, 25 FEP Cases at 118, the fact that one may think that management inadequately considered the complainant's qualifications or even the fact that one may think that management decision were carried out arbitrarily, does not in itself create Title VII liability. See also, St. Peter v. Secretary of the Army, 659 F.2d 1133, 138, n. 5, 26 FEP Cases 194, 197 n. 5 (D.C. Cir. 1981).

Therefore, we find that the complainant failed to show by a preponderance of the evidence that management's explanations are pretext and that management's actions were actually motivated by prohibited discriminatory animus. Thus, under a disparate treatment analysis, we find no discrimination with respect to the claim raised in this complaint.

## CONCLUSION

The complainant failed to establish by a preponderance of the evidence that he was discriminated against, based on race, age, disability and reprisal, with respect to the claim raised in this complaint.

## RIGHT OF APPEAL

Within 30 days of receipt of this final decision, the complainant has the right to appeal it to: **Equal Employment Opportunity Commission, Office of Federal Operations, P.O. Box 19848, Washington, D.C. 20036.** If an appeal is filed, EEOC Form 573 should be used. A copy of EEOC Form 573 is attached.

A copy of the appeal to the EEOC must also be sent to the VA Office of General Counsel at the following address: **Department of Veterans Affairs, Office of the General Counsel (024), 810 Vermont Ave., N.W., Washington, D.C. 20420.**

Statements or briefs in support of the appeal must be submitted to the EEOC within 30 calendar days of the filing of the appeal. A copy of any such statement or brief, including any statements made on EEOC's "Appellant Docketing Statement", must also be sent to the VA's Office of General Counsel at the above address.

If an appeal is filed with the EEOC, the appeal, and any subsequently filed statement or brief, must contain a statement certifying the date and method by which copies of these documents were served on the VA's Office of General Counsel.

If the complainant files an appeal with the Commission beyond the above-noted time limit, the complainant should provide the Commission with an explanation as to why the appeal should be accepted despite its untimeliness. If the complainant cannot explain why timeliness should be excused, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

The complainant also has the right to file a civil action in an appropriate United States District Court. The complainant may file a civil action

within 90 days of receipt of this final decision <u>if no appeal to EEOC has been filed</u>; or

within 90 days after receipt of the EEOC's final decision on appeal; or

after 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the Commission.

The complainant **must** name the person who is the official head of the Department of Veterans Affairs as the defendant. Department means the national organization, and not just the local office, facility, or unit in which the complainant works. The complainant may not name just the Department. The complainant must name **R. James Nicholson** as the defendant. The complainant must also state the official title of the Department head. The official title of the head of the Department of Veterans Affairs is **Secretary of Veterans Affairs**. Failure to provide the name or official title of the head of the Department may result in dismissal of the case.

If the complainant decides to file a civil action under Title VII (discrimination due to race, color, religion, sex, national origin, or reprisal) or under the Rehabilitation Act of 1973, as amended, (discrimination due to disability), and if the complainant does not have or cannot afford the services of an attorney, the complainant may request that the Court appoint an attorney to represent the complainant and that the Court permit the complainant to file the action without payment of fees, costs, or other security. **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action <u>**MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS**</u> of the date the complainant receives the final decision from the Department or the Commission.

_____  _____10-26-05_____
CHARLES R. DELOBE               Date
Director, Office of
Employment Discrimination
Complaint Adjudication

Attachment: EEOC Form 573

14