```
                                                              1
           UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF COLUMBIA
    ---------------------------------x
                                     :
    KEITH PIERCE                     :
                                     :
              Plaintiff              :
                                     :
         v.                          :    Civil Action No.
                                     :
    R. JAMES NICHOLSON, Secretary,   :    05-1989 (RMU)
                                     :
    U.S. Department of Veterans      :
                                     :
    Affairs                          :
                                     :
              Defendant              :
                                     :
    ---------------------------------x
         30(b)(6) Deposition of SANFORD GARFUNKEL
                   Washington, D.C.
               Wednesday, January 17, 2007
                      11:30 a.m.
    Job No: 1-95097
    Pages 1 - 38
    Reported by:  Donna Q. Buckhaults
```

COPY



L.A.D. REPORTING & DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

2

1    30(b)(6) Deposition of SANFORD GARFUNKEL,

2    held at the offices of:

3

4    VA MEDICAL CENTER

5    50 Irving Street, Northwest

6    Room 1B105

7    Washington, D.C.  20422

8    (202) 745-8000

9

10

11    Pursuant to agreement, before Donna Q.

12    Buckhaults, Registered Professional Reporter and

13    Notary Public of the District of Columbia.

14

15

16

17

18

19

20

21

22

DEPOSITION OF SANFORD GARFUNKEL
CONDUCTED ON WEDNESDAY, JANUARY 17, 2007

3

1              A P P E A R A N C E S
2   ON BEHALF OF THE PLAINTIFF:
3        JIMMY A. BELL, ESQUIRE
4        LAW OFFICE OF JIMMY A. BELL, P.C.
5        9610 Marlboro Pike
6        Upper Marlboro, Maryland   20772
7        (301) 599-7620
8
9   ON BEHALF OF THE DEFENDANT:
10        ALEXANDER D. SHOAIBI, ESQUIRE
11        U.S. ATTORNEY'S OFFICE
12        555 Fourth Street, Northwest
13        Washington, D.C.   20001
14        (202) 514-7236
15
16        CAROL BORDEN, ESQUIRE
17        U.S. DEPARTMENT OF VETERANS AFFAIRS
18        1722 I Street, Northwest
19        Washington, D.C.   20421
20        (202) 412-0080
21
22        ALSO PRESENT:   Keith Pierce

5

|   |   |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | SANFORD GARFUNKEL |
| 3 | having been duly sworn, testified as follows: |
| 4 | EXAMINATION BY COUNSEL FOR THE PLAINTIFF |
| 5 | BY MR. BELL: |
| 6 | Q.   Good morning. |
| 7 | A.   Good morning. |
| 8 | Q.   Have you ever had your deposition taken |
| 9 | before? |
| 10 | A.   Yes. |
| 11 | Q.   I just want to remind you of a couple of |
| 12 | rules.  We try not to talk over each other.  Sometimes |
| 13 | I may ask a question that you may think that you know |
| 14 | what I'm trying to ask, but just let me get the |
| 15 | question out. |
| 16 |        Can you state your name for the record? |
| 17 | A.   Sanford M. Garfunkel. |
| 18 | Q.   Can you state your job title? |
| 19 | A.   Medical Center Director, VA Medical Center, |
| 20 | Washington, D.C. |
| 21 | Q.   How long have you been in that position? |
| 22 | A.   1995.  I want to say April 1995. |

DEPOSITION OF SANFORD GARFUNKEL
CONDUCTED ON WEDNESDAY, JANUARY 17, 2007

6

1    Q.    What position did you hold prior to that?

2    A.    I was the Associate Chief Medical Director
3 for Operations for the VA.

4    Q.    And how long were you in that position?

5    A.    Four years.

6    Q.    What position did you hold before that?

7    A.    I was the Medical Center Director at the VA
8 in New York City.

9    Q.    How long have you known my client,
10 Mr. Pierce?

11    A.    I guess as long as I'm here.  I can't swear
12 he was here when I got here, but whenever he got here.
13 It's been years.

14    Q.    Prior to this EEO case that we're here to
15 deal with today, did you ever become aware of any
16 prior EEO complaints that he had made?

17    A.    Yes.  I'm aware that he had won a case, a
18 settlement.  I don't even know how it was resolved,
19 but I'm aware he had filed and won a case.

20    Q.    How did you become aware of that?

21    A.    I'm the director.  I know what goes on in
22 the Medical Center.  It's my job.

DEPOSITION OF SANFORD GARFUNKEL
CONDUCTED ON WEDNESDAY, JANUARY 17, 2007

11

1  sometimes a couple of others.  But in this case when
2  there's an inside candidate and an outside candidate,
3  I mean for me to ask exactly the same questions and
4  only exactly the same questions to me wouldn't make
5  sense.
6      Q.  Who was selected for the position?
7      A.  Eventually?  Eventually Mr. Sivley was put
8  in the position.
9      Q.  You said there was an inside candidate and
10 there was an outside candidate.
11     A.  Oh, I'm sorry.  Well, at that time there was
12 an outside candidate from -- I forget where she was
13 from, but she was selected and then declined the
14 position.
15     Q.  And why was she selected over Mr. Pierce?
16     A.  Because we felt that she was a better
17 candidate for the job.
18     Q.  Based on what?
19     A.  Well, I wasn't the selecting official.  But
20 certainly based on my interview of both candidates,
21 she seemed to have a good approach to the position, a
22 better approach than Mr. Pierce, and so I was

DEPOSITION OF SANFORD GARFUNKEL
CONDUCTED ON WEDNESDAY, JANUARY 17, 2007

12

1  supportive of the selecting official in saying we
2  ought to be selecting the other individual.
3      Q.  This person was from the outside.  Am I
4  correct?
5      A.  Outside this hospital, yes.
6      Q.  So tell me how she was a better qualified --
7      A.  Oh, I don't remember.  I don't remember.
8  What I do remember is, to be honest with you, that
9  after interviewing Mr. Pierce, I did not think he was
10 the candidate that I would want in that job.
11     Q.  Why not?
12     A.  Because I didn't think his answers to the
13 questions really showed insight into the program or
14 how the program could grow or how he would be a
15 successful leader in the program.
16     Q.  Did you ask her those questions, the outside
17 candidate?
18     A.  I'm sure I did.
19     Q.  But how could she know about a program that
20 she never worked at?
21     A.  Well, she would know in general about a
22 patient advocacy program.  So I could certainly say if

16

1  Q. What conversation did you have with Ms. Ross
2  about the two candidates, my client and the outside
3  candidate?
4  A. After the interviews I discussed the
5  interviews with her.
6  Q. You stated earlier in part of your answer
7  that the selecting official who you've now identified
8  as Ms. Ross considered his tenure in the acting
9  capacity; is that correct?
10 A. I'm not sure I said that. I said I'm sure
11 she did, but I mean I know -- and I'm just trying to
12 think from memory. I know that she was not happy with
13 Mr. Pierce's performance or did not feel that he would
14 make a successful lead advocate director, whatever
15 position title it was, and after the interview I
16 chatted with her about my interviews.
17 Q. What exactly did she tell you as it relates
18 to the evaluation of my client?
19 A. I don't remember exactly. I know she had
20 concern that he was -- that he would be the right
21 person for the position. I don't remember any details
22 about it.

DEPOSITION OF SANFORD GARFUNKEL
CONDUCTED ON WEDNESDAY, JANUARY 17, 2007

19

1   Q.   -- Sivley had left?

2   A.   I guess so.  Yeah, that sounds right.  He

3   had gone on active duty.

4   Q.   And this position was terminated.  Am I

5   correct?

6   A.   I don't know what language you're using,

7   terminated.  What do you mean, terminated?

8   Q.   Do you remember any language from Ms. Ross

9   saying that the position had been terminated?

10   A.   No, I don't, but that doesn't mean it didn't

11   happen.  But I don't remember.  Terminated would be a

12   funny word for that position at this point.

13   Q.   Let's go to the third position.  What

14   involvement did you have in the third position?

15   A.   You're talking about where Mr. Sivley was

16   put back in the position?

17   Q.   Yes, that's right.

18   A.   He, as you know, had been on active duty.

19   He came back and we didn't know what we wanted to do.

20   He sort of indicated he would be just as happy trying

21   something else, so we tried him in something else.

22   And then after a while it seemed -- my recollection is

DEPOSITION OF SANFORD GARFUNKEL
CONDUCTED ON WEDNESDAY, JANUARY 17, 2007

20

1  he didn't seem that happy in that new position and we
2  still didn't have a head of the patient advocacy
3  program, so we mutually said let's put Bill back in
4  the position.
5      Q.  Did he apply for the position?
6      A.  I don't remember how it was done.
7      Q.  If there's a vacancy announcement, doesn't a
8  person have to apply for the position in order to be
9  considered?
10     A.  I'm sure it was done legally.  I don't
11 remember whether we reannounced and he applied or we
12 just moved him back in or he was at that grade and had
13 been in there.  I think under those circumstances we
14 probably have authority to just move him back in, but
15 I honestly don't remember how it was.
16     Q.  Who was the person who actually moved him
17 back in?  Were you the person that made that decision?
18     A.  I made the ultimate decision to move him
19 back in, yeah, but it was at the recommendation of,
20 I'm sure, Terry and David West, my associate, and
21 people felt this would be a good move now.
22     Q.  So you don't recall whether or not he even

32

1   A.   Sivley.

2   Q.   Excuse me. -- Bill Sivley was listed as a
3   reference for my client for the position?

4   A.   I don't know.

5   Q.   For the third position you were the final --
6   you were the selecting official for the third
7   position?

8   A.   I don't know if I was the selecting
9   official. Probably not the selecting official. But I
10  certainly knew what was going on and said that's okay
11  with me if we go ahead and do that.

12  Q.   So to place Mr. Sivley in that position?

13  A.   Or in this case Mr. Sivley in that position,
14  right.

15  Q.   Excuse me. Mr. Sivley in the position?

16  A.   Right.

17  Q.   Can you tell me how that process worked, how
18  you can place someone in a position that they didn't
19  apply for?

20  A.   I think we've been through this. I don't
21  remember the exact process. I'm sure HR said this was
22  a legitimate thing to do. He was interested in the

1  position. We put him in. He may have applied. I
2  don't remember the mechanism by which he ended up in
3  that position.
4       Q.   Who is Michelle Spivak?
5       A.   Spivak.
6       Q.   Spivak. Excuse me.
7       A.   She's a public affairs person.
8       Q.   What interaction did you have with
9  Ms. Spivak?
10      A.   I don't know what you mean.
11      Q.   I mean what is your relationship with her
12 professionally?
13      A.   She is at that time -- well, she is sort of
14 at the same level as the patient advocate person. She
15 worked at that time for Terry Ross who's no longer in
16 the position, but she worked with Terry Ross. She now
17 works for another individual as does the lead patient
18 advocate.
19      Q.   Were you the person that brought her into
20 that position at that time?
21      A.   I don't remember whether at that time Terry
22 was here and it was under Terry or under -- or

36

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2         I, Donna Q. Buckhaults, Registered

3    Professional Reporter, the officer before whom the

4    foregoing proceedings were taken, do hereby certify

5    that the foregoing transcript is a true and correct

6    record of the proceedings; that said proceedings were

7    taken by me stenographically and thereafter reduced to

8    typewriting under my supervision; and that I am

9    neither counsel for, related to, nor employed by any

10   of the parties to this case and have no interest,

11   financial or otherwise, in its outcome.

12         IN WITNESS WHEREOF, I have hereunto set my

13   hand and affixed my notarial seal this 23rd day of

14   January, 2007.

15

16   My commission expires:

17   October 14, 2008

18

19   _Donna Q. Buckhaults_____

20   NOTARY PUBLIC IN AND FOR THE

21   DISTRICT OF COLUMBIA

22