```
1   IN THE MATTER OF:              )
2   KEITH PIERCE,                  )     ORIGINAL
3         Complainant,             ) Complaint No.
4         vs.                      ) 2004-0688-2001300419 &
5   DEPARTMENT OF VETERANS         ) 2004-0688-2001300415
6   AFFAIRS MEDICAL CENTER,        )
7   WASHINGTON, D.C.,              )
8         Respondent.              )
9
10
11              A F F I D A V I T
12
13        TRANSCRIPT OF PROCEEDINGS in the
14   above-entitled cause of the examination of
15   SANFORD GARFUNKEL, before EEO INVESTIGATOR CHERYL
16   CAMPBELL, on the 24th day of May, 2002, at the
17   hour of 2:25 p.m.
18
19
20
21   Reported by:  Kathryn L. Lilly
22
```

1   organization.

2          To be very honest with you, I have
3   spoken to Mr. West about the Complainant saying
4   what can we do for him. He seems to be unhappy,
5   and he's always filing complaints. If he's
6   doing a good job as a patient advocate, what can
7   we do for him. When someone performs well I
8   want to try to do good things and keep them in
9   the organization. So I'm looking to see what I
10  can do for him as well as I'm going to be
11  looking one day to see what I can do for
12  Ms. Spivak.

13         Q. The reason I was asking is in the
14  term vacancy announcement, under principal
15  duties, it states that the incumbent would have
16  supervision and oversight for public affairs,
17  patient advocacy, and some other organizations.
18  That's why I was asking.

19         A. The announcement for --

20         Q. The announcement when it was
21  re-posted as --

22         A. Supervisory responsibilities for

```
1    public affairs?
2         Q.  I'll read the whole paragraph.
3         A.  Please.
4         Q.  It says, principal duties, incumbent
5    reports to the office of the executive officer
6    and provides staffing support to the medical
7    center director and supervision and oversight
8    for public affairs, patient advocacy, marketing
9    and high performance development model training,
10   and then it goes on to discuss major duties.
11        A.  You have me stumped.  She does not
12   supervise those areas that I'm aware of.  And
13   I'm being honest I'm stumped at hearing that
14   paragraph.  I hadn't seen that.  Did you ask
15   Mr. West about that?
16        Q.  I spoke with him later after I had
17   finished taking his testimony and he was saying
18   that he thought that that was an error.
19        A.  It must have been, because I can
20   tell you that I have no intention, and she does
21   not do that.  She does not supervise those
22   people.  Mr. West supervises those people.
```

```
 1        Q.  Prior to Mr. Sivley leaving, did you
 2   state earlier that he supervised patient
 3   advocacy?
 4        A.  Mr. West supervised Mr. Sivley and
 5   public affairs, who is Karen Fedele, and
 6   marketing, those are Mr. West's
 7   responsibilities, and they continue to be his
 8   responsibility.  Ms. Spivak does not supervise
 9   those people.  If it said that in the
10   announcement it was announced incorrectly.
11   She's not doing it, that's a fact.  I'm stumped.
12   obviously I don't read every announcement.  I'm
13   stumped that that was in there.  It should not
14   have been in there.
15        Q.  Does she have interaction with the
16   patient advocacy group?
17        A.  She has interaction with them, sure.
18        Q.  Were you aware that the Complainant
19   had previous EEO activity?
20        A.  Sure.  He just won a case from us,
21   of course.  We settled the case with him.
22        Q.  Was Mr. Pierce not considered for
```

1   this position because of his previous EEO
2   activity?
3       A.  No, of course not, absolutely not.
4       Q.  Was Mr. Pierce not considered for
5   this vacancy because of his race?
6       A.  No, absolutely not.
7       Q.  Do you know what the Complainant's,
8   Mr. Pierce, current GS rating is?
9       A.  I think it's an 11, and the reason I
10  know it or I think I know is because as I said
11  to you I have been discussing with Mr. West what
12  can we do for Mr. Pierce if he's doing a good
13  job to make him a little happier in his
14  position. So I think I know he's an 11. I
15  can't swear to it, but I think I know that.
16      Q.  According to this vacancy
17  announcement the position that Ms. Spivak is in
18  is a 13. To the best of your knowledge, would
19  the Complainant have been eligible for this
20  position?
21      A.  If he's an 11, no, he would not have
22  been. That's not a solid 13, or is it? Is that

```
 1   a 12/13 or a 13?
 2          Q.  As far as Ms. Spivak's position?
 3          A.  Yes.
 4          Q.  The announcement just says GS-13.
 5          A.  Okay.
 6          Q.  Are you aware if there are any VA
 7   regulations that allow service-connected
 8   employees to be exempt from having to be in
 9   their current grade a year before being eligible
10   for the next higher grade?
11          A.  Not that I am aware of.  I'm not a
12   personnel expert, and I'm not aware of it.  I
13   rely on my personnel people, so I'm not aware of
14   that regulation at all.
15          Q.  Has the Complainant requested a
16   detail to another office?
17          A.  I am not aware of it.
18          Q.  When you were speaking with
19   Mr. Pishioneri in regard to trying to bring
20   Ms. Spivak on, did you ever interview
21   Ms. Spivak?
22          A.  I told you I had interviewed Ms.
```

```
1    Spivak about six months earlier.
2         Q.  Prior to bringing her on?
3         A.  Yes.  I can't remember, I may have
4    even had her come in when it looked like
5    something might develop to meet some other
6    people and get their opinion as well.  I think I
7    did in fact.
8         Q.  If the Complainant had actually
9    applied for this position and was referred,
10   since it's a term position, and if the position
11   let's say ended in a year, to the best of your
12   knowledge would you have been obligated to place
13   the Complainant in another position because of
14   tenure?
15        A.  To the best of my knowledge, no.
16        Q.  That's all the questions that have
17   for you today.  Is there anything that you want
18   to add for the record that was not covered?
19        A.  No, nothing else.
20             INVESTIGATOR CAMPBELL:  That
21   concludes the interview.
22                    * * * *
```

```
 1            CERTIFICATE OF NOTARY PUBLIC
 2              COMMONWEALTH OF VIRGINIA
 3       I, Kathryn L. Lilly, a Notary Public in
 4    and for the Commonwealth of Virginia, before
 5    whom the foregoing cause was taken, do hereby
 6    certify that the witness whose testimony appears
 7    in the foregoing transcript was taken by me
 8    in shorthand at the time mentioned in the
 9    caption hereof and thereafter transcribed by me;
10    that said transcript is a record of the
11    testimony given by said witness to the best of
12    my ability; that I am neither counsel for,
13    related to, nor employed by any parties to the
14    action; and further, that I am not a relative or
15    employee of any counsel or attorney employed by
16    the parties hereto, nor financially or otherwise
17    interested in the outcome of this action.
18
19                _____
                              NOTARY PUBLIC
20
      My Commission Expires:
21    November 30, 2005
22
```

JABS REPORTING, INC.
1155 Connecticut Avenue, N.W., Suite 400
Washington, D.C. 20036 (202) 296-6102