# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KEITH PIERCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 05-1989 (RMU) |
| | ) | |
| R. JAMES NICHOLSON, Secretary, | ) | |
| U.S. Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S  REPLY TO
## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE

Pursuant to Fed. R. Evid. 56 and Local Rule 7(h), Defendant submits the following Reply to Plaintiff's Statement of Genuine Issues in Response to Defendant's Statement of Material Facts Not in Dispute ("DSMF").

At the outset, Defendant notes that Plaintiff has failed to refute many of the statements contained in Defendant's Statement of Material Facts Not in Dispute.  Specifically, Plaintiff has failed to dispute inter alia his deposition testimony regarding the superior skills of the alleged selectee, William Sivley.  Local Rule 7.1(h) provides that "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Any statements in the Defendant's Statement of Material Facts that are not disputed are conceded.

1.      Defendant was aware of Plaintiff had participated in EEO activity.  Plaintiff's supervisors knew about Plaintiff's prior EEO activity. (Exhibit 2, page 18).

**RESPONSE:**  William Sivley ("Sivley") was hired as Lead Patient Advocate in 1999 or 2000.  Plff. Depo. at 12:19-13:2; DSMF at ¶ 7.  He was Plaintiff's direct supervisor.  Id. at 12:22-23.  Terry Ross ("Ross") was Plaintiff's second line supervisor.  DSMF at ¶ 8.  In March 2003, Ross came to the VA Medical Center in Washington, D.C.  Id.  Ross was Plaintiff's second line supervisor from the time of her arrival until Plaintiff changed jobs in 2004.  Id.  Prior to this litigation, Plaintiff never filed a discrimination complaint against either Ross or Sivley.

Ross was not aware of Plaintiff's prior EEO Activity.  DSMF at ¶ 79.  Plaintiff testified that he had "no idea" whether Terry Ross was aware of his prior complaints.  Id.  Both of Plaintiff's discrimination complaints were filed before Ross began working at the VA Medical Center.  Plaintiff's first complaint was filed on August 31, 1999 and was settled in May 2002.  DSMF at ¶¶ 85-86.  Plaintiff's second complaint  consists of two complaints that were consolidated at the administrative level.  DSMF at ¶ 88.  These complaints were filed on October 2001 and April 5, 2002.  Id.

Plaintiff speculates that since Garfunkel "was listed as the responsible management official [sic] in my previous case and now one of the final interviewing officials for this job, Ms. Ross could have obtained knowledge at that point."  DSMF at ¶ 79.  Sanford Garfunkel ("Garfunkel") was Director of the VA Medical Center so he was not one of Plaintiff's immediate supervisors.  See Plaintiff's Deposition, June 7, 2006 ("Plff. Depo.") at 12:19-23, 13:9-11, 13:18-20 (Plaintiff testified that Sivley was his first line supervisor and Terry Ross succeeded David West as his second line supervisor).    Plaintiff is not permitted to defeat summary judgment through conjecture but rather must provide record evidence sufficient to show that there is a dispute as to a material fact.  Evidence, consisting solely of the plaintiff's unsupported

2

allegations, is insufficient to deny a defendant's motion for summary judgment. See Exxon Corp. v. Federal Trade Commission, 663 F.2d 120 (D.C. Cir. 1980) (quoting Marks v. United States Dept. of Justice, 578 F.2d 261, 263 (9th Cir. 1978).(It is well settled that "(c)onclusory allegations unsupported by factual data will not create a triable issue of fact."). Personal speculation of discriminatory intent or unsubstantiated allegations cannot create a factual issue of pretext. Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999). A denial of a defendant's articulated reason without substantiation for the denial also is insufficient. Phillips v. Holladay Prop. Serv., Inc., 937 F. Supp. 32, 35, n.2 (D.D.C. 1996), aff'd, 1997 WL 411695 (D.C. Cir. 1997). Thus, Plaintiff failed to show that Ross, the selecting official, had any knowledge of his prior EEO activity.

2.    On January 23, 2004, Plaintiff requested, through Terry Ross ("Ross"), Executive Officer to the Medical Director, to be detailed into the Lead Patient Advocate position (GS-12/13) in the absence of Bill Sivley who was away on extended military duty (see Exhibit Deposition of Terry Ross.) In the request letter, Plaintiff listed his extensive credentials and accomplishments. In addition, since Mr. Sivley was a GS-13 and Plaintiff was a GS-11, Plaintiff enclosed a copy of the of the regulation which stated that, as an over 30% disability service connected veteran, Plaintiff had no time-in grade restrictions. (See Exhibit 3, annexed hereto).

    **RESPONSE:** Defendant does not dispute this statement.

3.    In response to Plaintiff's request described in paragraph 2, Ross sent correspondence to Plaintiff stating, Management had made a decision to abolish the Lead Patient

Advocate position and that they were instead recruiting for the position of Director, Office of

Patient Advocacy at the GS-13 level.  (See Depo of Terry Ross and Exhibit 3, annexed hereto).

Ross' correspondence also denied Plaintiff.s request described in paragraph 2. (See Exhibit 3,

annexed hereto).

   **RESPONSE:**  Defendant does not dispute this statement.


  4.   On March 8, 2004, Plaintiff asked Ross why Management had decided to make the

position GS-13 rather than GS-12/13.  In response, Ross denied that Management made any such

decision and claimed that it was her decision. (See Exhibit 3, annexed hereto).

  **RESPONSE:**  Defendant disputes the materiality of this statement.  Furthermore, the

identity of the decision maker on this issue is irrelevant because the issue of the grade of the

position is irrelevant to Plaintiff's claims in this case.  Even though the position of Director of

Patient Advocacy was at the GS-13 level, Plaintiff (then a GS-11) was still ultimately considered

for it.  Indeed, he was interviewed by the selecting panel and progressed to the second round of

interviews with Ross and Garfunkel.  DSMF at ¶ 28.


  5.     In her correspondence described in paragraph 3, Ross also indicated that the new

hiring criteria included skills and experience in analyzing and strategizing major medical center

programs.  (See Exhibit 3, annexed hereto)  In response, Plaintiff contrasted the previous position

description of Lead Patient Advocate (See Exhibit 3, annexed hereto) with the new position

description for Director, Office of Patient Advocacy (See Exhibit 3, annexed hereto).  Plaintiff

also indicated to Ross that he had extensive major medical center experience.  Plaintiff had

experience and had been detailed in this position previously. (See Exhibit 3, annexed hereto)

      **RESPONSE:**  Defendant notes that the criteria skills mentioned by Ross were those that

ultimately resulted in Plaintiff's non-selection for the Director's position because everyone who

interviewed Plaintiff (the selecting panel, Ross, and Garfunkel) unanimously noted Plaintiff's

lack of team leadership vision and skills.  DSMF at ¶¶ 29, 36, 39.

 

6.      At the conclusion of interviews, the position of Lead Patient Advocate was

re-established.  Bill Sivley was selected to that position without applying for the position [sic] so

her [sic] could get experience in graphs and charts(See Deposition of Terry Ross),

      **RESPONSE:**  Defendant disputes this statement.  The position of Lead Patient Advocate

was never abolished and so that it could be "re-established." DSMF at ¶ 51.  Sivley merely

returned from his detail and began working at his position of record.  Id. at ¶ 52.  Sivley was not

selected for this position in 2004 but rather was selected in 2000.  Id. at ¶7.  There was no need

for him to apply for a position that he already held.  Plaintiff did not believe that any

discriminatory or retaliatory bias tainted the selection in 2000.  DSMF at ¶ 56.  Indeed, Plaintiff

has testified that Sivley's skills as a Lead Patient Advocate are superior to his own.  Id. at ¶ 81.

While Sivley expressed a desire to do charts and graphs, this was not his first time doing charts

and graphs.  Id. at ¶ 54.

 

7.      On March 8, 2004, a new position was posted for an in-house job for a Program

Specialist. (See Exhibit 11, annexed hereto).  Plaintiff was the only person to apply for this

position. Since the position was GS-13, Plaintiff applied using his special hiring authority as a

30% disabled veteran. (Exhibit 3) Plaintiff was rejected for this position. (See Exhibit 3, annexed hereto). Plaintiff was informed that he did not meet the time in-grade restrictions. (See Exhibit 3, annexed hereto). However, the announcement indicated that persons with special hiring authority would be eligible for the position. (See exhibit 10, annexed hereto). The position was subsequently cancelled.

**RESPONSE:** Defendant does not dispute this statement except to say that the announcement, not the position, was cancelled. Defendant does note, however, that Plaintiff testified that he did not believe that any discriminatory or retailiatory bias affected his selection for that position (Job Announcement Number 04-23). DSMF at ¶ 23. Instead, Plaintiff believes that the Human Resources Department merely misapplied the law. Id.. Ross was informed that one person had applied for this position but that he did not meet the time-in-grade restrictions. Id. at ¶ 16. She was never informed of the applicant's identity. Id. Neither Ross nor Garfunkel had anything to do with this non-selection for Job Announcement 04-23. DSMF at ¶¶ 16, 21, and 23.


8.    After the position was cancelled, it was re-established in or about July 2004, announced, and opened to outside candidates. (See Exhibit 3, annexed hereto) Plaintiff was eligible and applied for this position. (See Exhibit 3, annexed hereto).

**RESPONSE:** Defendant responds that although the job announcement of 04-23 was cancelled, the position of Director of Patient Advocacy was not cancelled before October 2004. Plaintiff incorrectly cites the second announcement date as July 2004. The second announcement (Job Announcement #MCD-04-35) for the Director's position opened on April 2, 2004 and

6

closed on April 23, 2004.  Defendant's Motion for Summary Judgment ("DMSJ"), Exhibit 10.

Unlike Job Announcement #MCD-04-23, MCD -04-35 was open to federal employees outside of

the VA Medical Center.  Compare DMSJ, Exhibit 6 with DMSJ Exhibit 10.  Plaintiff applied for

MCD -04-35, and Human Resources deemed Plaintiff to be eligible, placing him on the cert list.

DSMJ, Exhibit 11.


9.       After he submitted his application, Ross approached Plaintiff and told him "you

made the list [of eligible candidates], but I must be honest with you – the other five candidates

are very well qualified and I feel it will be difficult for you."  Plaintiff believed that Ross was

trying to discourage him from seeking the position.  (See Exhibit 3 and Ms. Ross does not deny

it, Depo of Terry Ross, annexed hereto).  Ross made a similar remark on July 12, 2004 in front of

Michelle Spivak. (See Exhibit 3, annexed hereto).

**RESPONSE:** Defendant notes that Ross could not recall whether she made such a

statement to Plaintiff.  Ross Deposition, January 7, 2007, at 21:15-21.  Even if the statement

were made, it provides no evidence of discrimination or retaliation.  This statement only speaks

to the qualifications of the candidates.  It contains nothing to suggest a motive of race

discrimination or retaliation.  It should also be noted that Spivak was the chairperson of the

selecting panel that ranked Benjamin and Plaintiff as the top two candidates for Job

Announcement MCD-04-35.  See DMSJ Exhibit 12.

10.    When Plaintiff was selected as one of the top two (2) candidates for the position

described in paragraph 8, Ross scheduled a second interview with Plaintiff and the Medical

Center Director. (See Exhibit 3, annexed hereto). Plaintiff continued to follow up on the position.

(See Exhibit 3, annexed hereto).

**RESPONSE:**  Defendant does not dispute this statement.  Defendant merely notes that

the selecting panel selected Plaintiff as one of the top two (2) candidates for Job Announcement

MCD-04-35.  DSMF at ¶ 28.  Plaintiff did make inquiries regarding the status of the hiring

decision following his interviews with Ross and Garfunkel. Id. at ¶ 45.

11.    In the meantime, Ross lobbied to have the position re-announced to a larger

candidate pool, (See Exhibit 3, annexed hereto) notwithstanding the fact that Ross had sent out

correspondence five (5) months earlier to all the Patient Advocates, Social Workers, and Public

Affairs employees in the Department of Veterans Affairs nationwide for the purposes of

soliciting applications. (See Exhibit 3, annexed hereto).  Garfunkel retaliated against plaintiff

because plaintiff had filed EEO complaints (Garfunkel Affidavit Exhibit 2) Garfunkel and Ross

intentionally and purposefully did not want to select Plaintiff for this position because of

discriminatory. (Deposition for Garfunkel and Deposition of Ross and Exhibit 3 and Exhibit 2).

**RESPONSE:** Defendant notes that Ross directed Plaintiff to Human Resources for status

on the hiring decision concerning 04-35 because only they could advise him of that decision.

DSMF at ¶ 48.  Ross sought permission to re-advertise the position of Director of Patient

Advocacy after Nancy Benjamin rejected the offer of that position.  Id. at 50; Garfunkel 2005

Depo. at 9:18-21.  Defendant disputes Plaintiff's bald assertion that Garfunkel retaliated against

him because of his prior EEO activity.  Garfunkel was not the selecting official for 04-35.  Ross

was the selecting official for that position.  DSMF at ¶¶ 32, 44.  Ross knew nothing about

Plaintiff's prior EEO activity.  Id. at ¶ 79.  Plaintiff had filed these claims two years before Ross

was an employee with the VA Medical Center.  Id. at ¶¶ 85-86.  Plaintiff's assertion of

discrimination is not only baseless but also non-specific.  Plaintiff fails to specify the basis of this

discrimination (i.e., race, disability, etc.).


      12.    Plaintiff was well-qualified for the positions described in paragraphs 2, 7-8.  Not

only did Plaintiff have extensive experience in the required fields and meet all of the criteria, he

was also elected to the Board of Directors of the Society for Healthcare Consumer Advocacy of

the American Hospital Association where he represented Patient Advocates and Directors of

Patient Advocacy. ( See Exhibit 3 and Depo of Terry Ross)

**RESPONSE:** Defendant vigorously disputes any suggestion that Plaintiff was

well-qualified for all of the positions described in paragraphs 2, 7-8.  These positions are Lead

Patient Advocate and Director, Office of Patient Advocacy.  Plaintiff's qualifications for the Lead

Patient Advocate position is an issue that has been dead and buried since 2000 when Defendant

selected Sivley over Plaintiff for that position.  See DSMF at ¶ 7, 81.  Plaintiff did not dispute the

fairness of that selection.  Id. at ¶ 81.  In fact, he applauded that selection.  His deposition

testimony is full of praise for Sivley's superior qualifications.  Id. at ¶¶ 54-56, 81.  Furthermore,

even if Plaintiff were well-qualified for the position of Lead Patient Advocate, that position was

not open to applications because it was held by Sivley.  DSMF at ¶ 51.

      Plaintiff's assertion that he was well-qualified for the position of Director, Office of

Patient Advocacy is also wholly unsupported and immaterial.  While Defendant does not dispute that Plaintiff was elected to the Board of Directors of the Society for Healthcare Consumer Advocacy of the American Hospital Association, Plaintiff did not have extensive experience in the required fields and meet all of the criteria.  The selecting panel, Ross, and Garfunkel all agreed that Plaintiff lacked the leadership abilities necessary for the Director, Office of Patient Advocacy position.  The selecting panel noted that Plaintiff had "seem[ed] to have, for the most part provided services as opposed to managing them."  DSMF at ¶ 29.  After interviewing Plaintiff, Ross concluded that Plaintiff lacked significant experience in leading a program.  DSMF at ¶ 35.  After Garfunkel interviewed Plaintiff, he concluded that his answers did not show insight into "how he would be a successful leader in the program."  Id. at ¶ 39.  In addition, Plaintiff lacked the necessary experience creating graphs and charts.  Id. at ¶35.  Plaintiff has put forward no evidence of his leadership skills or his ability to work with charts and graphs.  These skills were the key qualifications for the Director's position.  Id.  All evidence in the record, including Plaintiff's own deposition testimony, shows that Plaintiff lacked both of these vital skills.  See DSMF at ¶ 55 (Plaintiff admitted that he could not do the types of graphs that Sivley does.)

    Plaintiff's assertion that he was well-qualified is immaterial.  Plaintiff cannot establish pretext simply based on his subjective assessment of his own performance, for "plaintiff's perception of himself, and of his work performance, is not relevant."  Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 7 (D.D.C. 2000) (citation omitted).  "Plaintiff's subjective belief of qualifications is not evidence that can be used to establish that she was qualified for the job."  Harris v. University of the District of Columbia, No. 87-2631 (LFO), 1990 WL 99316 at *5

(D.D.C. July 6, 1990) (citing Morse v. ATT Information Systems, 703 F. Supp. 1072, 1083

(S.D.N.Y. 1989)); see also Carberry v. Monarch Marking Systems, Inc., 30 Fed. Appx. 389, 393,

2002 WL 220634 at *3 (6th Cir. Feb. 11, 2002) ("If plaintiff had merely given his own subjective

opinion that he was better qualified then Mr. Driscoll, he would not have presented a jury issue");

Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996) (cannot show pretext merely by

asserting "personal belief" as to most qualified person); Johnson v. University of Wisconsin at

Eau Claire, 70 F.3d 469, 481 (7th Cir. 1995); Branson v. Price River Coal Co., 853 F.2d 768, 772

(10th Cir. 1988) ("It is the perception of the decision maker which is relevant [to determining

pretext], not plaintiff's perception of herself.").


13.    It its Answer to the Complaint, Defendant claims that it did not have knowledge of

Plaintiff's disability and denies that Plaintiff had any disability whatsoever. (Answer ¶ 5, 12.).

However, Plaintiff submitted proof of his 80% disability with his applications for the positions

described in paragraphs 2 and 7, supra.  As a result, Defendant can deny neither Plaintiff's

disability nor Defendant's actual knowledge of Plaintiff's disability.

**RESPONSE:**  This is not a Statement of Material Fact.  Defendant does not dispute that

Plaintiff applied for the position under the special hiring authority (10 point preference veteran)

and disabled veteran preference.  Although this application would indicate that Defendant was

aware that Plaintiff had a disability, it does not indicate the exact details of that knowledge.  See

DSMF at ¶ 73.  The presence and extent of Defendant's knowledge of Plaintiff's disability are

irrelevant, however, because Plaintiff has conceded that Defendant did not discriminate against

him based on disability.  Plff. Opp. at 29.  To the extent that Plaintiff is claiming a ten point

Veteran's Preference under 5 USC Section 2108, the application of that preference does nothing to advance his case. The rating panel scored Nancy Benjamin at 174 points while they gave Plaintiff a score of only 150 points. DSMF at ¶ 28. Assuming arguendo that Defendant did not properly apply this preference, the retroactive application of this preference would only increase Plaintiff's score up to 160 points. This score increase is insufficient to overcome the twenty-four point spread between Benjamin and Plaintiff. It is obvious why Plaintiff only "nibbles around the edges" of his ten point perference without making any argument. He has no argument.

14.     Defendant admittedly has insufficient knowledge as to whether Plaintiff's supervisors had actual knowledge of Plaintiff.s prior EEOC activity. (Answer ¶ 8-10). Plaintiff can show that Plaintiff's supervisors had actual knowledge of Plaintiff's prior EEOC activity. (Exhitit #3)

**RESPONSE:** Plaintiff is merely repeating the baseless allegation that he made in in his Statement of Material Facts In Dispute No. 1. There is no evidence that Plaintiff's supervisors knew of his prior EEO activity. Plaintiff's second line supervisor (and selecting official for MCD 04-35) in this case, Terry Ross, had no knowledge of Plaintiff's prior EEO activity. DSMF at ¶ 79. Both of Plaintiff's discrimination complaints were filed before Ross began working at the VA Medical Center. DSMF at ¶¶ 85-86.

15.     Defendant states that the vacancy announcements under which Plaintiff applied were withdrawn and an employee who had previously held the position prior to going on active duty with the military was placed back in the position upon his return and indication that he was

amenable to the placement. (Answer ¶ 8-10). Plaintiff can show that Defendant's characterization of the Lead Patient Advocate described in paragraph 2 as one held open for a person on military duty until his return is pretext. Plaintiff can show that the position was vacant and open to any applicant. Plaintiff can also show that the position was thereafter abolished in favor of the position of Director, Office of Patient Advocacy. Plaintiff can finally show that, after conducting interviews for the position of Director, Office of Patient Advocacy, that position was suddenly cancelled in favor of the original Lead Patient Advocate position, to which Bill Sivley was appointed without any interview process or open application period. (Depo of Terry Ross and Depo of Standford [sic] Garfunkel) (Exhibits 2, 3, 4)

**RESPONSE:** After failing to fill with the position of Director, Office of Patient Advocacy with a qualified applicant, Defendant abolished that position. DSMF at ¶ 53. Plaintiff's assertion that no one held the position of Lead Patient Advocate during Sivley's military detail is false. Id. at ¶¶ 51, 53. At all times relevant to this action, William Sivley held the position of Lead Patient Advocate and therefore that position was never vacant and open to applications. Id. at ¶ 51. Contrary to Plaintiff's statement, the position of the Lead Patient Advocate was never abolished. Id. at ¶¶ 51, 53. Defendant had planned on abolishing that position once a qualified applicant was found for the Director's position. Id. at ¶ 10. Defendant's inability to find a qualified applicant for the Director's position resulted in the retention of the Lead Patient Advocate position and the resumption of the position's duties by Sivley, its holder of record. DSMF at ¶¶ 46, 52-53. Plaintiff's compounds his flawed characterization of this situation when he states that "Sivley was appointed without any interview process or open application period." Again, Plaintiff has mischaracterized the entire situation. Sivley did not

need to go through an interview process or an open application period for the position of Lead

Patient Advocate in 2004 because he would be applying and interviewing for a job that he had

held since 2000.  DSMF at ¶¶ 7, 51; Defendant Reply Exhibit (showing that effective June 20,

2004, Sivley returned from military duty to his position as Lead Patient Advocate).  Sivley went

through an application process approximately four years before he resumed his duties in October

2004.  DSMF at ¶ 7.  Sivley was selected over Plaintiff.  Id. at ¶ 7.  Plaintiff does not challenge

that process and indeed agrees that Sivley was the best qualified candidate for that position.  Id.

at ¶¶ 7, 56, 81.  Again, Plaintiff provides no supporting record evidence for his wide sweeping

assertions, but rather he merely states, "Plaintiff can show."


16.     Defendant can not deny that Plaintiff was well qualified for all of the positions

described in paragraphs 2, 7-8. (Exhibits 2, 3, 4).

**RESPONSE:** Plaintiff essentially restates the assertion that he put forth in paragraph 12.

Defendant repeats his response in paragraph 12, and once again notes that Plaintiff's personal

appraisal of his credentials is  totally irrelevant to his claims of discrimination and retaliation.


17.     Mr. Garfunkel made the file approval to place the white male in the lead advocate

position. And cancel the position that plaintiff applied for.  So he made the final decision.  He

was the responding official to Plaintiff's prior EEO Complaint.

**RESPONSE:** Defendant does not dispute that Garfunkel approved the final decision to

cancel the position for which Plaintiff applied.  Defendant also does not dispute that Garfunkel

was the responding official named in Plaintiff's prior EEO Complaint.  Garfunkel did not,

however, place Sivley in the Lead Patient Advocate position in 2004.  Sivley had been in that

position since 2000.  DSMF at ¶¶ 7, 51.  At the recommendation of Ross and Associate Medical

Center Director David West, Garfunkel merely agreed that Sivley resume the duties of his

position of record because Defendant had not found a qualified person to serve as Director,

Office of Patient Advocacy.   Garfunkel 2007 Depo. at 19:22-20:4; 20:18-21.  Plaintiff has

attempted to transform a non-hiring event (resumption of duties) into a hiring event.  Because

there was no selection in this case, Plaintiff cannot cast Garfunkel as the selecting official and

Sivley as the selectee.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, DC Bar #489610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____/s/_____
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Judiciary Center Building – Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendant

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2007, I caused the foregoing Defendant's

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Defendant's

Reply to Plaintiff's Statement of Material Facts Not in Dispute to be served by the Electronic

Case Filing system or, if this means fails, then by mail, postage prepaid, addressed as follows:

**Jimmy A. Bell, Esq.**
**Law Office of Jimmy A. Bell, Esq.**
**9610 Marlboro Pike**
**Upper Marlboro, Maryland 20772**

_____
/s/

ALEXANDER D. SHOAIBI,  DC Bar # 423587
Assistant United States Attorney
Judiciary Center Building – Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

_____

16

17