1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

------------------------------x
                              :
KEITH PIERCE                  :
                              :
         Plaintiff            :
                              :
    v.                        :   Civil Action No.
                              :
R. JAMES NICHOLSON, Secretary,:   05-1989 (RMU)
                              :
U.S. Department of Veterans   :
                              :
Affairs                       :
                              :
         Defendant            :
                              :
------------------------------x

30(b)(6) Deposition of TERRY ROSS

Washington, D.C.

Wednesday, January 17, 2007

12:10 p.m.

Job No: 1-95097

Pages 1 - 40

Reported by: Donna Q. Buckhaults


L.A.D. REPORTING & DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

DEPOSITION OF TERRY ROSS
CONDUCTED ON WEDNESDAY, JANUARY 17, 2007

8

1      MR. BELL: I think I have the announcement
2   number here.
3  BY MR. BELL:
4      Q.  Let me back up.  I'll start back from a
5  little further.
6          Did there ever become a time under your
7  tenure that the lead patient advocate position became
8  open?
9      A.  No.
10     Q.  Do you know a Bill Sivley?
11     A.  Yes, I do.
12     Q.  Do you know what position he had before he
13 went on military service duty?
14     A.  He was lead patient advocate.
15     Q.  And what happened to his position once he
16 left?
17     A.  We had an acting for a lead -- acting lead
18 patient advocate in that position while he was on
19 military leave.
20     Q.  How was that acting person selected?
21     A.  I don't know.  She was acting before I came
22 on board.

DEPOSITION OF TERRY ROSS
CONDUCTED ON WEDNESDAY, JANUARY 17, 2007

11

1  Q.  Then how do you know he was detailed?

2  A.  Because he did request it.

3  Q.  Did you ever see any paperwork?

4  A.  I don't recall.

5  Q.  So if you don't recall seeing paperwork, how
6  do you know for a fact that he was, in fact, detailed?

7  A.  Because when he came back from military
8  leave, he was detailed to fiscal service.

9  Q.  Who detailed him?

10  A.  The Medical Center.  He was detailed.

11  Q.  Who was his supervisor?

12  A.  I was his supervisor.

13  Q.  And you don't remember signing any paperwork
14  to detail him?

15  A.  I don't recall.

16  Q.  How long was the detail supposed to be for?

17  A.  I don't recall.

18  Q.  At some point that lead advocate position,
19  it changed, didn't it?

20  A.  No, not that I'm aware of.

21  Q.  They didn't call it something else?

22  A.  No.

17

1   A.   His application for?

2   Q.   His application for the position.

3   A.   Absolutely.

4   Q.   Were you aware that he held this position
5   before?

6   A.   What position is that?

7   Q.   That he held an acting lead advocate
8   position before?

9   A.   This wasn't a position for an acting lead
10  patient advocate.

11  Q.   My question is simple. Were you aware that
12  he had held an acting lead advocate position before?

13  A.   No.

14  Q.   So you don't remember reading that in his
15  application?

16  A.   I don't recall.

17  Q.   When you rated both the candidates, did you
18  give them a number?

19  A.   The rating and ranking panel did provide
20  numbers, yes.

21  Q.   When you did the second interview because --
22  how many people were in the second interview?

DEPOSITION OF TERRY ROSS
CONDUCTED ON WEDNESDAY, JANUARY 17, 2007

21

1   A.   One didn't have anything to do with the
2 other.
3   Q.   Have you told me everything you utilized in
4 terms of making a decision to hire the other person
5 over my client?
6   A.   I answered all of your questions. I'm not
7 sure I understand the question.
8   Q.   Is there any other consideration that you
9 made as it relates to making the decision for this
10 other person over my client?
11       MR. SHOAIBI:   Other than what?
12       MR. BELL:   What she's already stated.
13       MR. SHOAIBI:   Objection, vague, overbroad.
14       THE WITNESS:   Thank you.
15 BY MR. BELL:
16   Q.   You can answer.
17   A.   I mean there's nothing for me to say.
18   Q.   Is there anything else that you utilized in
19 order to make the determination selecting the other
20 person over my client?
21       MR. SHOAIBI:   Did you ever ask her why she
22   selected the other person over your client?