# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KEITH PIERCE,                               :
                                            :
            Plaintiff,                      :        Civil Action No.: 05-1989 (RMU)
                                            :
            v.                              :        Document Nos.:  30, 38
                                            :
GORDON H. MANSFIELD, [1]                    :
Acting Secretary,                           :
U.S. Department of Veterans Affairs,        :
                                            :
            Defendant.                      :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS;
### GRANTING THE PLAINTIFF'S MOTION TO SUPPLEMENT HIS OPPOSITION;
### GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This employment discrimination case comes before the court on the defendant's motion to dismiss or, in the alternative, for summary judgment.  The plaintiff, Keith Pierce, brings this action against the defendant, the Department of Veterans' Affairs, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*[2]  Specifically, the plaintiff contends that the defendant discriminated against him on account of race and retaliated against him for engaging in prior protected activity when it did not select him as Lead Patient Advocate and Director of the Office of Patient Advocacy.

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d)(1), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor.

[2]     The plaintiff's complaint includes allegations of age and disability discrimination, but the plaintiff concedes these claims in his response to the defendant's motion for summary judgment, or in the alternative motion to dismiss.  Compl. ¶ 20; Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 28.

Because the plaintiff failed to exhaust his administrative remedies the court grants the defendant's motion to dismiss all but one of the plaintiff's discrimination claims. As to the remaining discrimination claim, because the plaintiff has not met his burden of showing that the defendant's proffered nondiscriminatory reasons are a pretext, the court grants the defendant's motion for summary judgment. Finally, because the plaintiff does not establish a prima facie case for his retaliation claim, the court grants the defendant's motion for summary judgment as to this claim as well.

## II. BACKGROUND

### A. Factual History

The plaintiff is an African-American man who has been employed by the Department of Veterans Affairs Medical Center in Washington D.C. ("VAMC-DC") for fourteen years. Compl. ¶ 19; Def.'s Mot. to Dismiss or in the Alternative Mot. for Summ. J. ("Def.'s Mot."), Ex. 38 ("Pl.'s Dep.") 7:10, June 7, 2006. At the time of the events giving rise to this action, the plaintiff was employed as a Patient Advocate, GS-11, a position he had held for "seven or eight years." Pl.'s Dep. 7:19-8:3; 9:9. As a Patient Advocate, the plaintiff was responsible for "tracking, trending, and resolving" patient complaints. *Id*. at 9:10-19.

In 1999 or 2000, the plaintiff served temporarily as Acting Lead Patient Advocate, and he applied to become the permanent Lead Patient Advocate. *Id*. at 10:11-14. The VAMC-DC selected another applicant, William Sivley, who then became the plaintiff's direct supervisor. *Id*. at 10:9-17; 12:19-13:2. Sivley served as Lead Patient Advocate for "a year to a year and a half" when he was called to active military duty in 2002. *Id*. at 13:3-6. While away on military duty, Sivley remained Lead Patient Advocate, but was on leave without pay. Def.'s Statement ¶ 8;

Def.'s Mot., Ex. 1.  On January 9, 2004, the Director of the VAMC-DC, Samuel Garfunkel,

granted Sively's request to further extend his "leave without pay" status until July 13, 2004 in

recognition of his continued military duty.  *Id*.  In the same communication, Garfunkel informed

Sivley that VAMC-DC needed to fill his position as Lead Patient Advocate due to considerable

workload, but assured him that he would receive a position of "like seniority, status, and rate of

pay" upon his return to VAMC-DC.  *Id.*  When Sivley returned to VAMC-DC, he "indicated he

would be just as happy trying something else" and was granted his request to be placed on detail

with the VAMC-DC's fiscal office.  Garfunkel's Dep. 19:18-21; Def.'s Statement of Material

Facts ("Def.'s Statement") ¶ 52.  During Sivley's absence, Michelle Spivak, the Director of

Office of Public Affairs and Community Relations, served as Acting Lead Patient Advocate.  *See*

Pl.'s Opp'n, Ex. 8 ("Ross's Dep. submitted by Pl.") 9:18-10:1, January 17, 2007 (noting that

Spivak acted as Lead Patient Advocate beginning at least March 2003 until October 2004).

On January 21, 2004, the VAMC-DC's Executive Officer, Terry Ross, requested and

received approval for the creation of a new position, the Director of the Office of Patient

Advocacy ("Director").  Def.'s Mot., Ex. 2.  A couple of days later, the plaintiff formally

requested to be detailed as Acting Lead Patient Advocate.  *Id.*, Exs. 3, 20.  Ross explained to the

plaintiff that management had decided to "abolish [the Lead Patient Advocate position], and

begin recruitment for a Director, Office of Patient Advocacy at the GS-13 level."  *Id.*, Ex. 4.  In

the interim, Spivak would continue to serve as Acting Lead Patient Advocate.  *Id*.

### 1.  Vacancy Announcement 04-23

Recruitment for the Director position began on March 8, 2004 under vacancy

announcement 04-23, and was open only to candidates already employed by VAMC-DC.  Def.'s

Mot., Ex.6.  The plaintiff applied for this position, but on April 1, 2004, the Human Resources

Department determined that he had not fulfilled the requisite time at his grade level to move to a higher grade. *Id.*, Ex. 9. After the announcement closed on March 26, 2004, Human Resources informed Ross that there were no qualified applicants for the vacancy. *Id.*, Ex. 7.

### 2. Vacancy Announcement 04-35

Ross opened the position to all Federal Government employees on April 2, 2004 under vacancy announcement 04-35. Def.'s Mot., Ex. 10. The plaintiff applied once again for the Director position, but this time was found eligible for preferential hiring status as a 30% or more disabled veteran.[3] *Id.*, Ex. 11. After the announcement closed on April 23, 2004, Ross received a list of six eligible candidates, all of whom were then interviewed by a five-member panel. *Id.*, Ex. 11; 12. The panel recommended that the two highest scoring applicants, including the plaintiff, be invited for a second round of interviews with Ross and Garfunkel. *Id.*, Ex. 12; Pl.'s Dep. 39:12-18. After this second round of interviews, Ross found the plaintiff lacked experience both in "running a major program" and "using any kind of graphs and charts," Def.'s Mot., Ex. 39 ("Ross's Dep.") 16:10-21, January 17, 2007, and Garfunkel felt that the plaintiff did not have satisfactory answers to most questions, including what issues existed with the program and how he would improve it, Def.'s Mot., Ex. 36 ("Garfunkel's 2005 Dep.") 8:8-13, June 1, 2005. Ross, the selecting official, offered the position to the other finalist who ultimately declined. Def.'s Mot., Ex.11.

### 3. Vacancy Announcement 04-35A and Sivley's Return

After the finalist turned down the position, Ross reposted the Director position for the third and final time on September 7, 2004 under vacancy announcement 04-35A. Def.'s Mot.,

---

[3]     The defendant does not dispute the plaintiff's 30% disability. Def. Mot., Ex. 11. As such, the time in grade restrictions that rendered the plaintiff ineligible for the 04-23 vacancy do not apply. Pl.'s Dep. 29:1-10; Def.'s Mot., Ex. 11.

Ex. 16.  On September 9, 2004, the plaintiff learned of his nonselection for 04-35 when a coworker informed him about the Director position's reposting under 04-35A.  *Id.*, Ex. 17. Human Resources informed the plaintiff that, as a prior applicant, he would receive automatic reconsideration for the reposted Director position.  *Id.*  On September 14, 2004, the plaintiff asked Ross why the position had been reposted, and Ross responded that she wanted a larger pool of applicants.  *Id.*, Ex. 18.  Ross cancelled the announcement, however, before the scheduled September 13, 2004 close date.  *Id.*, Ex. 16; Ross's Dep. 32:9-16.

Ross claims the cancellation was prompted by Sivley's decision to return to the Lead Patient Advocate position from his detailed position.  Ross's Dep. 30:6-13.  Since returning from military duty, Sivley had been detailed to another VAMC-DC office but remained on record as the Lead Patient Advocate.  Ross's Dep. 30:6-13; 34:2-11.  Around the time of the third posting for the Director position, Sivley expressed a desire to return to his duties as Lead Patient Advocate and to increase his job responsibilities to include working with graphs and charts, an area with which he had experience.  Ross's Dep. 32:17-33:3.  Ross and Garfunkel decided "not [to] go forward with establishing the Director [position]," instead, opting to "maintain the Lead Patient Advocate [position]" and "put [Sivley] back in the position."  Ross's Dep. 34:2-11; Garfunkel's Dep. 20:1-4.  Under Ross's recommendation, Garfunkel "made the ultimate decision" to reinstate Sivley as Lead Patient Advocate.  Garfunkel's Dep. 20:16-21.  On October 27, 2004, Ross e-mailed the plaintiff that Sivley would be returning to his position as Lead Patient Advocate.  Def.'s Mot., Ex. 20.

### 4.  The Plaintiff's EEOC activity

On January 5, 2005, the plaintiff filed a retaliation claim stemming from Equal Employment Opportunity Commission ("EEOC") activity predating the alleged discrimination in

the instant action.  The plaintiff filed his first EEOC complaint in August 1999 for race

discrimination.  Def.'s Mot., Ex. 26.  After exhausting his administrative remedies, the plaintiff

filed a complaint with this court, which the parties settled on May 1, 2002.  *Id.*, Ex. 27, 28.  On

November 2, 2001 and April 5, 2002, the plaintiff filed two additional complaints with the

EEOC for retaliation, harassment, and hostile work environment allegedly arising out of the

1999 claim.  *Id.*, Ex. 31.  The Department of Veteran's Affairs' Office of Resolution

Management ("ORM")[4] consolidated the two complaints on May 8, 2002.  *Id.*  On April 28,

2003, the EEOC issued a closure order because the plaintiff failed to prosecute the case.  *Id.*, Ex.

32 (citing 29 C.F.R. § 1614.109(b)).

On December 6, 2004, the plaintiff contacted an EEOC counselor within ORM alleging

retaliation for prior protected activity and discrimination on the basis of his race, age and

disability.  *Id.*, Ex. 20.  Specifically, the plaintiff expressed concern with his denied request on

January 23, 2004 to be detailed as Acting Lead Patient Advocate, as well as nonselection for

announcements 04-23, 04-35 and 04-35A.  *Id.*  On January 5, 2005, the plaintiff received notice

of his right to file a discrimination complaint in a letter from the EEOC and filed his complaint

with EEOC that same day.  *Id.*, Ex. 21, 23.  The plaintiff's EEOC complaint alleged he suffered

harassment, retaliation for prior protected activity, and discrimination on the basis of race, age

and disability when the defendant did not select him for the Director position or agree to detail

him as Acting Lead Patient Advocate.  Def.'s Mot., Ex. 23.

---

[4]    According to its website, the Office of Resolution Management ("ORM") "provides EEO
discrimination complaint processing services to [Department of Veterans Affairs] employees,
applicants for employment, and former employees.  These services include counseling,
investigation, and procedural final agency decisions."  U.S. Dep't of Veterans Affairs, ORM
Home, http://www.va.gov/orm/ (last visited Dec. 11, 2007).

ORM accepted for further EEOC investigation and processing the plaintiff's nonselection claim under vacancy announcement 04-35A, but dismissed the remaining claims (nonselections for announcements 04-23 and 04-35, the denial of the request to be Acting Lead Patient Advocate and miscellaneous claims of harassment) due to the plaintiff's failure to seek counseling within 45 days of the alleged incident of discrimination. *Id.* (citing 29 C.F.R. § 1614.105(a)(2)). ORM sent notice to the plaintiff of his "right to request a hearing and decision by an EEOC administrative judge with a subsequent final action by the Department [of Veteran's Affairs], or an immediate final decision by the Department without a hearing." Def.'s Mot., Ex. 24. Because the plaintiff failed to respond to the notice, ORM forwarded the plaintiff's case to the Department's Office of Employment Discrimination Complaint Adjudication ("OEDCA")[5] on October 7, 2005. *Id.* On October 26, 2005, OEDCA issued a final agency decision that affirmed the dismissal of the complaints and made the additional finding that the plaintiff failed to show by a preponderance of the evidence that he was discriminated against when he was not selected for vacancy announcement 04-35A. *Id.*, Ex. 24.

### B. Procedural History

The plaintiff filed his complaint in this court on October 7, 2005, before the agency announced its final decision. The plaintiff's complaint alleges that his nonselections for vacancy announcements 04-23, 04-35 and 04-35A constitute unlawful discrimination on account of race and that these nonselections amount to retaliation for his previous EEOC activity.[6] *See generally*

---

[5]    According to its website, "OEDCA's function is to issue the Department's final agency decision on complaints of employment discrimination filed against the Department." Department of Veterans Affairs, Facilities Locator and Directory – OEDCA, http://www1.va.gov/directory/guide/facility.asp?ID=2008 (last visited Dec. 11, 2007).

[6]    The plaintiff confuses the positions of Lead Patient Advocate and Director throughout his complaint and analysis. The court, therefore, presumes that the plaintiff's claims refer to the defendant's decision to cancel announcement 04-35A for the Director position and reinstate

Compl.  The defendant moves for dismissal of the case for lack of subject-matter jurisdiction and failure to state a claim on which relief may be granted, or, in the alternative, summary judgment.

## III.  ANALYSIS

### A.  Subject Matter Jurisdiction

### 1.  Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies.  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997).  It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies.  *Brown v. Marsh,* 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it").  Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden.  *Id*. at 12 (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies.  *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-

---

Sivley as Lead Patient Advocate.  Compl. ¶ 20 (stating that the plaintiff was discriminated and retaliated against "on October 21, 2004 when he was not selected for the re-announced position of Program Specialist (Lead Patient Advocate) GS-13").

13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

### 2. The Plaintiff Failed to Exhaust Administrative Remedies for Discrimination Claims Related to Vacancy Announcements 04-23 and 04-35

The defendant argues that the court should dismiss the plaintiff's claims related to vacancy announcements 04-23 and 04-35 because the plaintiff did not timely exhaust his administrative remedies.  Def.'s Mot. at 4.  Specifically, the defendant argues that the plaintiff did not seek counseling for these claims within 45 days of the alleged incident, as required by 29 C.F.R. § 1614.105(a)(2).  *Id*. at 5.  The defendant also notes that ORM dismissed the claims pertaining to vacancy announcements 04-23 and 04-35 on timeliness grounds.  *Id*.  The plaintiff does not respond directly but states generally that he exhausted all of his administrative remedies "because [the] defendant accepted [the] plaintiff's claims for investigation and over 180 days have passed since the formal investigation began."  Pl.'s Opp'n at 12.

The Code of Federal Regulations requires the plaintiff to initiate contact with an EEOC counselor within 45 days of the alleged discriminatory conduct.  29 C.F.R. § 1614.105(a)(1). The plaintiff first sought counseling from the EEOC more than eight months after the alleged discriminatory nonselection for vacancy announcement 04-23 and almost three months after the alleged discriminatory nonselection for vacancy announcement 04-35; both periods exceed the 45-day limit imposed by the regulation.[7]  Because the plaintiff failed to timely exhaust his

---

[7]    On April 1, 2004, the plaintiff learned he was not eligible for consideration under announcement 04-23.  Def.'s Mot., Ex. 9 (memorandum from VAMC-DC Staffing Specialist to the plaintiff). On September 9, 2004, the plaintiff learned of his nonselection for Director under announcement 04-35 when Ross decided to repost the position under a new announcement.  *Id.*, Ex. 17 (e-mail from the plaintiff to VAMC-DC human resources staff expressing his concern with nonselection under announcement 04-35); Def.'s Statement ¶ 48.  The plaintiff's first contact with an EEOC officer, however, was not until December 6, 2005.  Def.'s Mot., Ex. 20 (EEOC Counselor Report).

administrative remedies within 45 days as required by 29 C.F.R. § 1614.105(a)(1), the court

grants the defendant's motion to dismiss the plaintiff's race discrimination claims related to

vacancy announcements 04-23 and 04-35.[8]

### B.  The Court Grants in Part the Defendant's Motion for Summary Judgment

The defendant moves for summary judgment on the grounds that the plaintiff fails to

make out a prima facie case of discrimination or, in the alternative, that the plaintiff fails to show

that the defendant's legitimate, nondiscriminatory reason for nonselection is a pretext.  Def.'s

Mot. at 7, 13.  The court grants the defendant's motion for summary judgment because the

defendant provides a legitimate, nondiscriminatory reason for its actions, and the plaintiff fails to

establish that this reason was pretextual.

### 1.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are

"material," a court must look to the substantive law on which each claim rests.  *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could

---

[8]    The defendant also argues that the court should dismiss the plaintiff's retaliation claim for failure
to exhaust administrative remedies.  Def.'s Mot. at 6.  The plaintiff, however, need not exhaust
his administrative remedies to bring a retaliation claim.  *Jones v. Greenspan*, 402 F. Supp. 2d
294, 298 (D.D.C. 2005); *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 178 (D.D.C. 2005)
(stating that "[t]he proposition that exhaustion is unnecessary for retaliation claims stems, in part,
however, from the fear that filing a separate charge will result in more retaliation, and that a
retaliation claim is necessarily related to the underlying charge").  Accordingly, the court denies
the defendant's motion to dismiss the plaintiff's retaliation claim for failing to exhaust
administrative remedies.

establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id*. at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id*.

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675. Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

**2.  Legal Standard for Race Discrimination**

Generally, to prevail on a claim of discrimination under Title VII, a plaintiff must follow

a three-part burden-shifting analysis known as the McDonnell Douglas framework.  *Lathram v.*

*Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003).  The Supreme Court explained the framework as

follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a
> prima facie case of discrimination.  Second, if the plaintiff succeeds in proving the prima
> facie case, the burden shifts to the defendant "to articulate some legitimate,
> nondiscriminatory reason for the employee's rejection" . . . .  Third, should the defendant
> carry this burden, the plaintiff must then have an opportunity to prove by a
> preponderance of the evidence that the legitimate reasons offered by the defendant were
> not its true reasons, but were a pretext for discrimination . . . .  The ultimate burden of
> persuading the trier of fact that the defendant intentionally discriminated against the
> plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted)

(quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of race discrimination under Title VII, the plaintiff must

show that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment

action; and (3) the unfavorable action gives rise to an inference of discrimination."  *Brown v.*

*Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Stewart v. Ashcroft*, 352 F.3d 422, 428 (D.C. Cir.

2003); *Carroll v. England*, 321 F. Supp. 2d 58, 68 (D.D.C. 2004).  "The burden of establishing a

prima facie case of disparate treatment is not onerous."  *Burdine*, 450 U.S. at 253.  If the plaintiff

establishes a prima facie case, a presumption then arises that the employer unlawfully

discriminated against the employee.  *Id.* at 254.  To rebut this presumption, the employer must

articulate a legitimate, nondiscriminatory reason for its action.  *Id.*  The employer "need not

persuade the court that it was actually motivated by the proffered reasons."  *Id.*  Rather, "[t]he

defendant must clearly set forth, through the introduction of admissible evidence, reasons for its

12

actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

If the employer successfully presents a legitimate, nondiscriminatory reason for its actions, "the McDonnell Douglas framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination vel non." *Lathram*, 336 F.3d at 1088 (internal citations omitted). At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Id*. (citing *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc)). The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances of the case. *Id*. at 1291.

### 2. The Defendant Establishes a Nondiscriminatory, Legitimate Reason for Not Selecting the Plaintiff for Announcement 04-35A

Assuming, *arguendo*, that the plaintiff makes out a prima facie case of race discrimination, the defendant has met its burden of providing a legitimate, nondiscriminatory reason for not selecting the plaintiff for the Director position under vacancy announcement 04-35A. *See Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) (noting that a plaintiff's prima facie case becomes irrelevant once a defendant establishes a nondiscriminatory explanation since

13

the defendant has "done everything that would be required of it if the plaintiff had properly made out a prima facie case" (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983))).  The defendant explains that the reason for its nonselection of the plaintiff as Director under 04-35A was because "that job announcement was cancelled," and therefore, the "plaintiff could not qualify for a . . . job that did not exist."  Def.'s Mot. at 10.

The record supports this assertion as Ross cancelled announcement 04-35A less than a week after it was posted, *see* Ross's Dep. 32:9-16; Def.'s Mot., Ex. 16, and Ross was unaware that anyone had even applied for the announcement.  Ross's Dep. 30:1-5; 32:6-8; Def.'s Mot. at 10.  The defendant, moreover, notes that the plaintiff was not selected as Lead Patient Advocate because Sivley had fulfilled that position since 2000 and, therefore, there was no vacancy in the position.  Def.'s Mot. at 10, 16.  Because the defendant puts forth one or both of "the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications [and] the absence of a vacancy in the job sought," *Morgan v. Fed. Home Loan Mortgage*, 328 F.3d 647, 651 (D.C. Cir. 2003) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977)), the defendant has met its burden of providing legitimate, nondiscriminatory reasons for its decision not to select the plaintiff for the Director position under vacancy announcement 04-35A and, instead, to reinstate Sivley as the Lead Patient Advocate, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (explaining that the defendant's "burden is one of production, not persuasion").

### 3.  The Plaintiff Fails to Demonstrate Pretext

After the defendant has proffered a legitimate, nondiscriminatory reason for its actions, the burden shifts to the plaintiff to show that the reason is pretextual.  *McDonnell Douglas*, 411 U.S. at 802.  The plaintiff offers various arguments in support of his assertion that "management

went out of their way to avoid selecting [him]" for the Director position.  Pl.'s Opp'n at 28.  The plaintiff must also, however, show that discriminatory animus motivated the defendant's nonselection under announcement 04-35A in order to establish pretext and defeat summary judgment.  *See Morgan*, 328 F.3d at 654 (noting that in the pretext stage the plaintiff "bears the 'burden of showing that a reasonable jury could conclude' that [the defendant] failed to offer him the position out of discriminatory . . . animus" (quoting *Waterhouse*, 298 F.3d at 993)).  The defendant maintains that the plaintiff fails to show that "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."  Def.'s Mot. at 13.

The plaintiff puts forth evidence of his qualifications in order to establish that the defendant's evaluation was "not based on objective criteria."  Pl.'s Opp'n at 13.  The plaintiff further maintains that the defendant knew of his qualifications, and, therefore, discriminated against him by not offering him the Director position.  *Id.* at 7.  Among the plaintiff's proffered documentation establishing his qualifications and the defendant's knowledge thereof is a statement by a co-worker who allegedly overheard a group of interviewers during the 04-35 application process commenting that the plaintiff was "the best qualified person for the job."[9] Pl.'s Mot. for Leave to Supplement, Ex. 1 ("Dee Statement").

---

[9]     The court grants the plaintiff's motion to supplement his opposition.  The defendant argues that the statement is inadmissible because it is unsworn and, therefore, irrelevant.  Def.'s Opp'n to Pl.'s Mot. at 3-4.  The defendant further states, without offering any legal arguments, that the statement is hearsay.  *Id.*  At the summary judgment stage "a nonmovant is not required to produce evidence in a form that would be admissible at trial, [but] the evidence still must be capable of being converted into admissible evidence."  *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (citing FED. R. CIV. P. 56(e)).  Because the plaintiff's submitted a sworn affidavit in its reply and because the affidavit arguably is not hearsay, but rather a party admission, *see* FED. R. EVID. 801(d)(2), the court takes the letter under consideration.

Even if the plaintiff establishes that he was best qualified for the Director position when he interviewed under announcement 04-35, the plaintiff still fails to establish that a reasonable juror could infer discriminatory animus when the defendant cancelled 04-35A and reinstated Sivley. The court notes that the defendant never considered any applicant's qualifications for the Director position under 04-35A. Ross's Dep. 30:1-5. The defendant's early closure of the announcement supports this proposition. *See Id.* 32:9-16; Def.'s Mot., Ex. 16. The plaintiff, moreover, presents no evidence to dispute the defendant's claim that it did not review the plaintiff's application or anyone else's under 04-35A.[10] The documentation offered by the plaintiff, including the statement with which the plaintiff seeks to supplement his opposition, relates to the 04-35 discrimination claim that has already been dismissed due to the plaintiff's failure to exhaust administrative remedies. Because the defendant's evaluation of the plaintiff's qualifications relates to the 04-35 discrimination claim, not to 04-35A, because the defendant did not evaluate applicants for 04-35A and because the reasons given for closing the Director position and reinstating Sivley are wholly unrelated to the plaintiff's qualifications, a reasonable juror could not infer from the plaintiff's purported evidence that the defendant's reasons were mere pretext.

The plaintiff next argues that the defendant's reason for reinstating Sivley is untrue. Pl.'s Opp'n at 6-7. Specifically, the plaintiff argues that Sivley should not have been reinstated because he "did not even apply for the position." *Id.* at 28. The plaintiff, further, attempts to show, without citing to the record, that the defendant is untruthful by asserting that "management cannot remember what if any paperwork was required to be filed [sic] out" in order to reinstate

---

[10]    Although Human Resources advised the plaintiff that he would be automatically considered for 04-35A given his previous application under 04-35, Def.'s Mot., Ex. 17, Ross was never informed of this fact, Ross's Dep. 30:1-5.

Sivley. *Id.* at 28. In essence, the plaintiff takes issue not with the defendant's reason for

reinstating Sivley,[11] but rather with the validity of the reinstatement itself. The plaintiff

questions the truthfulness of the defendant's claim that Sivley was already serving as Lead

Patient Advocate and, therefore, did not have to apply. *See Id.* at 7, 28. The plaintiff fails,

however, to provide any evidence supporting his claim that Sivley did not remain on record as

Lead Patient Advocate. To the contrary, the evidence before the court supports the defendant's

claim that Ross kept the Lead Patient Advocate position active until she found a qualified

Director, *see* Def.'s Mot., Ex. 4 (Ross's e-mail to the plaintiff noting that the Acting Lead Patient

Advocate would remain as acting until the Director position was filled), and that Sivley, despite

being detailed elsewhere, remained on record during that time as Lead Patient Advocate, Ross's

Dep. 12:9-12; 37:1-6 (noting that the Lead Patient Advocate position was not abolished nor

transformed into the Director position and that Sivley was "already in an encumbered position

called the Lead Patient Advocate position and he just assumed his responsibilities"); *see* Def.'s

Statement ¶ 51-52. The plaintiff, nonetheless, would have this court determine that the

---

[11]     The lack of specificity and clarity in plaintiff's arguments makes it difficult to determine if and
how he is attacking the defendant's legitimate, nondiscriminatory reason for reinstating Sivley as
Lead Patient Advocate. *See* Pl.'s Opp'n at 28 (asserting, after briefly discussing Sivley's
reinstatement, that "[i]t is clear that management reasons are untrue" without specifying what
reasons are untrue). The defendant's reason for Sivley's reinstatement was that he was on record
since 2000 as the Lead Patient Advocate position, and expressed a desire to return to his duties of
record. Def.'s Mot. at 29-30 (stating that "[m]anagement has every right to order employees to
do the assigned duties of their position"). To the extent that the plaintiff argues this reason is
"untrue" because he should have been offered the Lead Advocate Position, the court notes that
the plaintiff neither makes arguments nor presents any evidence establishing that he was more
qualified than Sivley or that the Lead Patient Advocate position was vacant. *See Aka*, 156 F.3d at
1294 (noting that "in cases involving a comparison of the plaintiff's qualifications and those of
the successful candidate" a discriminatory inference is established by evidence that the plaintiff
was "significantly better qualified for the job"). The plaintiff, in fact, agrees that Sivley had been
a competent supervisor and had superior graphing and chart skills. Pl.'s Dep. 45:17-46:25, 84:17-
19.

defendant's reasons are untruthful because Ross could not recall whether, and if so what, paperwork was required to reinstate Sivley.  Although "an employer's violation of its own procedures can be evidence of pretext," *Greer v. Paulson*, 2007 WL 3225370, at *11 (D.C. Cir. 2007) (citing *Jones v. Wash. Metro. Area Transit Auth.*, 205 F.3d 428, 434 (D.C. Cir. 2000)), the plaintiff neither points to a procedure governing reinstatement nor alleges Ross violated a procedure.  Because the plaintiff does not provide sufficient factual support for his assertions that the defendant's reasons for reinstating Sivley are untruthful, the plaintiff fails to establish that the defendant's legitimate, nondiscriminatory reason for reinstating Sivley is a pretext.

The plaintiff also argues generally that "[t]he Exhibits 2, 3, 4 [and the] Depositions of Sandford [sic] Garfunkel and Terry Ross show that a reasonable [t]rier of fact could make a finding of discrimination."  Pl.'s Opp'n at 10.  In lieu of legal analysis, the plaintiff's general assertion is followed by pages of deposition excerpts.  *See Id.* at 10-12; 14-27.  The court's review of the excerpts presents no additional evidence from which the plaintiff can establish a discriminatory inference.  Because the excerpts add no apparent value to the plaintiff's factual and legal arguments beyond that already elaborated elsewhere, and because the court is not obliged to "sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make its own analysis and determination of what may, or may not, be a genuine issue of material fact," *Davis v. District of Columbia*, 2007 WL 2193698, at *5 (D.D.C. 2007) (quoting *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)), the plaintiff fails to show that "a reasonable jury could conclude that the defendant's legitimate, nondiscriminatory reason for the plaintiff's termination 'was pretextual and that the true reason was discriminatory.'" *Royall v. Nat'l Ass'n of Letter Carriers*, 507 F. Supp. 2d  93, 108 (D.D.C. 2007) (quoting *Weber v. Battista*, 494 F.3d 179, 182-83 (D.C. Cir. 2007)).  Because the plaintiff has not established

pretext, the court grants the defendant's motion for summary judgment on the plaintiff's 04-35A

discrimination claim.

### D. The Court Grants the Defendant's Motion for Summary Judgment for the Plaintiff's Retaliation Claims Relating to Vacancy Announcements 04-23, 04-35 and 04-35A

#### 1. Legal Standard for a Retaliation Claim

To prevail on a claim of retaliation, a plaintiff must follow the *McDonnell Douglas*

framework. *Morgan*, 328 F.3d at 651 (applying the *McDonnell Douglas* framework to a Title

VII retaliation claim); *Duncan v. Wash. Metro. Area Transit Auth.*, 2

14 F.R.D. 43, 49-50 & n.8 (D.D.C. 2003) (applying the *McDonnell Douglas* framework to a

Rehabilitation Act retaliation claim). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of [ retaliation]. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, [non-retaliatory] reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation] . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted)

(quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in

a statutorily protected activity, (2) a reasonable employee would have found the challenged

action materially adverse, and (3) there existed a causal connection between the protected

activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct.

2405, 2415-16 (2006); *see also Scott v. Kempthorne*, 2006 WL 1980219, at *3 (10th Cir. July 17,

2006). The plaintiff's burden is not great: the plaintiff "merely needs to establish facts adequate

to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

With regard to the first prong of the plaintiff's prima facie case of retaliation, statutorily protected activities include the filing of EEOC complaints. *Forkkio v. Powell*, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002). As for the second prong, "[t]he anti-retaliation provision seeks to . . . prohibit[] employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington N.*, 126 S. Ct. at 2415 (citations omitted). Additionally, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* Finally, under the third prong, the plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)). To qualify as a causal connection, however, the temporal proximity between the employer's knowledge of the protected activity and the adverse personnel action must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and that a 20-month period suggests "no causality at all").

### 2. The Plaintiff Fails to Establish a Prima Facie Case for the Retaliation Claims

The plaintiff alleges that the defendant retaliated against him for prior EEOC activity by not selecting him for the Director position. Pl.'s Opp'n at 2. The defendant retorts that the plaintiff fails to establish a prima facie case of retaliation because no causal connection exists

between the nonselection and the plaintiff's prior protected activity. Def.'s Mot. at 21-22.
Specifically, the defendant contends that Ross, the selecting official for the position of Director,
had no knowledge of the plaintiff's previous EEOC activity, *id*. at 23-24, and that the large
amount of time that elapsed between the prior EEOC activity and the nonselections does not
support a causal connection. *Id.* at 24. The plaintiff counters that a causal connection exists
because Garfunkel, who did have knowledge of the plaintiff's prior EEOC activity, "made the
final decision" to reinstate Sivley as Lead Patient Advocate and to cancel the Director position.[12]
*See* Pl.'s Opp'n at 7, 11.

   While Garfunkel acknowledges having knowledge of the plaintiff's prior EEOC activity,
Pl.'s Mot., Ex. 7 ("Garfunkel's Dep.") 6:14-22, January 17, 2007, the plaintiff must demonstrate
that Garfunkel was responsible for the adverse employment action, *Davis*, 355 F. Supp. at 351
(noting that in order to establish a causal connection "case law in this jurisdiction requires that
the plaintiff demonstrate that the *decision-maker*, not just some other *employee of the company*
was aware of the protected activity" (citing *Buggs v. Powell*, 293 F. Supp. 2d 135, 150-51
(D.D.C. 2003))). Because Ross admits that Sivley's reinstatement prompted her to cancel the
Director position, Ross's Dep. 30:6-13, Garfunkel was an indirect decision maker in the
plaintiff's adverse employment action, *see Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir.
2006) (noting that an adverse actions occurs when an employee "experiences materially adverse
consequences affecting . . . future employment opportunities such that a reasonable trier of fact

---

[12]   The plaintiff also alleges, without citing to the record or providing any further argument, that
"[t]here is a causal link between the disparate treatment of those who had not engaged in
protected activity [and the defendant]." Pl.'s Opp'n at 2. The court reminds the plaintiff that
while his "burden is not great," he is required to "establish facts adequate to permit an inference
of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001). Legal conclusions
absent of factual support will not suffice. *See id.*

could find objectively tangible harm" (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002))).

While Garfunkel may have been an indirect decision maker, the causal connection is substantially tempered because of his reliance on Ross's recommendation.  Garfunkel's Dep. 20:18-21.  Ross, unlike Garfunkel, denies having any knowledge of the plaintiff's prior EEOC activity.  Ross's Aff., Question 14.  Neither the plaintiff nor the record suggest otherwise. [13] Garfunkel's knowledge, when qualified by Ross's input, fails to establish a causal connection between the plaintiff's prior EEOC activity and the decision to cancel the Director position under announcement 04-35A.  *Cf. Timmons v. U.S. Capitol Police Bd.,* 407 F. Supp.2d  8, 12 (D.D.C. 2005) (holding that no causal connection existed despite the knowledge of two officials who made the adverse employment decision about the plaintiff's prior protected activity because the decision had been made "only after listening to the opinion of plaintiff's supervisors" who did not have any knowledge).

The plaintiff nonetheless attempts to show retaliatory animus and, therefore, causality on behalf of Garfunkel by offering a statement he made in October 2002 during a deposition for the prior EEOC complaints in which he notes that the plaintiff "seemed to be unhappy and he's always filing complaints."  Pl.'s Opp'n. at 12.  This statement, however, does not indicate retaliatory animus, and is too tenuous – having been made more than a year and a half prior to the adverse action – to support a causal link.  *Cf. Marshall v. Shalala*, 16 F. Supp. 2d 16, 24

---

[13]     The plaintiff's asserts that his "immediate supervisors knew of plaintiff's protected conduct" but fails to specify who these "immediate supervisors" were.  Presumably, the plaintiff refers to Ross but the plaintiff's submissions do not cite factual or legal support for the contention that Ross had knowledge.  Such unsubstantiated speculation is insufficient to create a genuine issue of material fact surrounding Ross's knowledge.  Pl.'s Opp'n at 1.  *Thompson v. Rice*, 422 F. Supp. 2d 158, 180 (D.D.C. 2006) (concluding that "[m]ere unsubstantiated personal speculation is insufficient to create a genuine issue of material fact" (citing *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999))).

(noting that causal connection is not established were the alleged retaliatory animus is "so attenuated").

Moreover, the timespan between the plaintiff's prior EEOC activity and the adverse action does not support a causal connection. *Saunders v. DiMario*, 1998 WL 525798, at *5 (D.D.C. 1998) (stating that "[t]he greater the time that elapses between the protected activity and the alleged acts of retaliation . . . the more difficult it is to demonstrate any causal connection, and, absent any other evidence, where the gap is sufficiently great, it is appropriate to grant judgment as a matter of law" (citation omitted)); *see also Breeden*, 532 U.S. at 273 (2001) (noting that a 20-month lapse between the protected activity and adverse employment action, "without more," suggests no causality); *Henderson*, 407 F. Supp. 2d at 53 (explaining that "causation requires the plaintiff to show both knowledge and timeliness" (citing *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985))). In the instant case, the plaintiff's protected activity consists of two prior EEOC claims, the latest of which he filed on April 5, 2002.[14] Almost two years later, the plaintiff experienced what he considers the first retaliatory employment action: Human Resources' determination that the plaintiff was ineligible for consideration under vacancy announcement 04-23.[15] Over 29 months had passed before the plaintiff learned he was not selected under announcement 04-35,[16] and over 30 months had passed when, in late October 2004, the plaintiff learned that Sivley had been reinstated as the Lead Patient Advocate and that

---

[14]    The plaintiff filed the first claim in August 1999 and settled in May 2002. Def.'s Mot., Ex. 26; 28. In May 2002, ORM consolidated two other claims filed in 2001 and 2002. *Id.*, Ex. 31. The EEOC issued a closure order for the consolidated claims on April 28, 2003. *Id.*, Ex. 32.

[15]    On April 1, 2004, the plaintiff learned he was not eligible for consideration under announcement 04-23. Def.'s Mot., Ex. 9 (memorandum from VAMC-DC Staffing Specialist to the plaintiff).

[16]    On September 9, 2004, the plaintiff learned of his nonselection for Director under announcement 04-35 when Ross decided to repost the position under a new announcement. Def.'s Mot., Ex. 17 (e-mail from the plaintiff to VAMC-DC human resources staff expressing his concern with nonselection); Def.'s Statement ¶ 48.

he had not been selected for Director under announcement 04-35A. Def.'s Mot., Ex. 19. The 24- to 30-month lapse between the plaintiff's protected activity and the adverse activity is insufficient to support a causal connection. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that temporal proximity must be "very close" to suffice as evidence of causality; a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a 20-month period suggests "no causality at all"); *Mayers v. Laborers' Health and Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007) (noting 8- or 9-month period as insufficient to serve as evidence of causation).

Because so much time had elapsed between the protected activity and the adverse action, and because Ross's recommendation bore strongly upon Garfunkel's decision to reinstate Sivley, the court concludes that Garfunkel's knowledge is insufficient to establish a causal connection. *See Timmons*, 407 F. Supp. 2d at 12 (rejecting a causal connection where an adverse employment action was taken at the recommendation of others with no knowledge and a significant time had passed between the protected activity and the adverse action). The court, therefore, grants the defendant's motion for summary judgment as to the plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's motion to dismiss, and grants in part and denies in part the defendant's motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 10th day of January, 2008.

RICARDO M. URBINA
United States District Judge